**MEAD JOHNSON PHARMACEUTICAL GROUP, Mead Johnson & Company, a Delaware Corporation, Plaintiff,**

v.

**Otis R. BOWEN, et al., Defendants.**

**Civ. A. No. 85–3971.**

United States District Court, District of Columbia.

Feb. 5, 1986.

Alan H. Kaplan, Washington, D.C., for plaintiff.

Kenneth L. Jost, Office of Consumer Litigation, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

Plaintiff brings this action seeking a declaration that its drug product Desyrel, trazadone HCL, was approved for marketing by the Food and Drug Administration (FDA) in 1982 and not on December 24, 1981, the date of the FDA approval letter. Plaintiff seeks such a determination to qualify its product for a ten-year period of non-patent marketing exclusivity provided by the 1984 Amendments to the Federal Food, Drug, and Cosmetic Act (FFDCA), 21 U.S.C. § 321, *et seq.* Plaintiff also requests injunctive relief prohibiting FDA from granting approval of generic copies of Desyrel within the ten-year period. This action is presently before the Court on the motion of plaintiff for a preliminary injunction. After consideration of the motion, the opposition, supporting and opposing memoranda, the evidence, and the argument of counsel, the Court concludes that plaintiff has failed to make a showing sufficient to entitle it to the extraordinary relief requested.

## BACKGROUND

On October 10, 1978, plaintiff filed a new drug application (NDA) under 21 U.S.C. § 355 for FDA approval of Desyrel. On December 21, 1981, FDA advised plaintiff that its review of the Desyrel NDA was completed but certain revisions in the draft labeling would be required before final approval. Three days later, on December 24, 1981, FDA notified plaintiff by letter and telephone that the Desyrel NDA was approved. Significantly, the following language was contained in the letter:

We have completed our review of this application as submitted with revised draft labeling on December 22, 1981, and have concluded the drug is safe and effective for use as recommended in the labeling. Accordingly, the application is approved.

As agreed to over the phone, this approval is granted with the understanding that any remaining issues regarding validation will be promptly and satisfactorily resolved and that final printed labeling will be promptly submitted and revised as follows before the drug is marketed.

On January 19, 1982, plaintiff submitted final printed labeling to FDA which approved it on February 1, 1982.

The Drug Price Competition and Patent Term Restoration Act became law on September 24, 1984. This amendment to the FFDCA provided for the approval of generic copies of drugs marketed after 1962. The purpose of the Act was to facilitate FDA approval of generic copies of pioneer drugs by permitting the submission of Abbreviated New Drug Applications (ANDAs). The ANDAs need not contain full reports of investigations to prove the safety and effectiveness of the drug but include only adequate manufacturing and bioequivalence data. The basic safety and effectiveness of the generic drug could be demonstrated by simple reference to the pioneer drug product the generic manufacturer seeks to copy.

The Act provides a limited period of protection from competition through its "exclusivity" provisions under which FDA may not make immediate approval of ANDAs for certain previously approved pioneer drugs. Specifically, section 505(j) of the Act provides in relevant part:

If an application ... submitted under section 355(b) for a drug ... was approved during the period beginning January 1, 1982, and ending on the date of the enactment of this subsection, the Secretary may not make the approval of an [abbreviated new drug application] ... before the expiration of ten years from the date of approval of the application under subsection (b).

Following the passage of the Act, FDA sought information from plaintiff with respect to its NDAs. Plaintiff, as it had consistently done, advised FDA on October 24, 1984, that Desyrel was approved on December 24, 1981, and claimed no entitlement to the exclusivity provisions. However, shortly before the patent on Desyrel was to expire on April 19, 1985, plaintiff challenged, for the first time, the December 1981 approval date.

On June 20, 1985, plaintiff filed a citizen petition with FDA alleging that Desyrel was not approved until after January 1, 1982. The petition was denied on August 15, 1985, and the petition for reconsideration was likewise denied on December 12, 1985.

## DISCUSSION

The criteria governing the issuance of preliminary injunctive relief in the District of Columbia Circuit are well established. In order to prevail on a motion seeking this extraordinary relief, plaintiff must demonstrate: 1) that it is likely to succeed on the ultimate merits of the claim; 2) that it will be irreparably harmed if the preliminary relief is denied; 3) that the issuance of relief will not significantly harm other interested parties; and 4) that the public interest favors the issuance of a preliminary injunction. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir. 1977); *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921, 925 (D.C.Cir.1958).

## A. *Likelihood of Success on the Merits*

The gravamen of plaintiff's complaint is that the December 24, 1981, letter from FDA did not constitute approval of the Desyrel NDA. To support its claim that it is likely to succeed on the merits, plaintiff contends that the letter was merely an "approvable letter" as it set forth labeling requirements which had to be complied with before the product could be marketed. Thus, plaintiff contends that the Desyrel NDA could not have been approved before either January 19, 1982, the date on which the final printed labeling was submitted to FDA, or February 1, 1982, the date of approval. Since plaintiff views approval of the labeling as a condition precedent to the approval of the drug, it argues that the earliest date of approval could not have been before January or February 1982. Based on either date, plaintiff argues that because the Desyrel NDA was approved after January 1, 1982, it is entitled to the benefit of the ten-year exclusivity provision of the FFDCA. Plaintiff also asserts in further support of its position that Desyrel was not marketed until March 1982. Notwithstanding its legal contention, plaintiff has failed to cite any statutory provisions or case law to support its position that FDA may not approve an NDA before a manufacturer submits final printed labeling.

In opposition, defendants argue that the letter of December 24, 1981, was not an approvable letter but was an approval letter. To support their position, defendants refer to that portion of the letter which states in clear language that the Desyrel NDA "is approved." In further support, defendants maintain that the language of that letter which plaintiff characterizes as imposing a condition precedent to approval merely recounts an understanding between plaintiff and FDA, reached in discussions on December 22 and 23, 1981, that the final labeling would contain a certain agreed upon revision. Furthermore, defendants contend that plaintiff consistently asserted that December 24, 1981, was the approval date of the Desyrel NDA prior to April 1985. Plaintiff agrees.

After careful consideration of the arguments presented by both sides, the Court is not convinced that plaintiff has sustained its burden of proving substantial likelihood of success on the merits. First, the Court cannot state with requisite certainty that there is a substantial likelihood that plaintiff can demonstrate that the letter of December 24, 1981, was not an approval letter. The language of the letter approving the NDA appears clear. Moreover, contrary to the plaintiff's arguments as to the conditional nature of the letter, plaintiff's own witness testified that an insignificant labeling change was agreed upon and that the submission of final printed labeling could follow approval of the NDA. Next, the Court finds as compelling that plaintiff did consider December 24, 1981, as the Desyrel NDA approval date for more than three years following receipt of the letter. Equally convincing, however, is the fact that following the passage of the 1984 Amendments to the FFDCA, plaintiff reported to FDA that Desyrel was approved on December 24, 1981, that Desyrel was not entitled to statutory exclusivity, and that April 30, 1985, was the Desyrel patent expiration date.

Finally, defendants argue that plaintiff's claim is one for review under the Administrative Procedure Act and the Court should find that plaintiff is not likely to succeed on the merits because the decision of FDA was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." In opposition, plaintiff maintains that this is not an administrative record review case as plaintiff seeks a declaration of its rights under the FFDCA pursuant to the Court's federal question jurisdiction, 28 U.S.C. § 1331. Whether the Court considers this action as necessitating review under the Administrative Procedure Act or views this as a *de novo* action for declaratory and injunctive relief is not an issue which must be resolved at this stage of the proceedings. Employing either standard, the Court finds that plaintiff has failed to meet its burden that it is likely to succeed on the merits of this action.

## B. *Irreparable Harm*

With respect to irreparable harm, plaintiff contends that if preliminary relief is not granted, the safety and effectiveness data in the Desyrel NDA file will be released to the public pursuant to 21 U.S.C. § 355($l$)(5). Plaintiff maintains that this data have significant trade secret and confidential commercial value during the exclusivity periods provided for under the FFDCA. Once this material is released to the public, plaintiff argues, it is "forever public" and there is no means by which plaintiff could seek to recover damages in the event the release is found to have been improper. As further evidence of irreparable harm, plaintiff claims that if ANDAs are approved for generic copies of Desyrel, plaintiff will suffer the loss of sales of its product.

As our Court of Appeals recently stated, the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a "clear and present need" for equitable relief to prevent irreparable harm. *Wisconsin Gas Company v. Federal Energy Regulatory Commission,* 758 F.2d 669, 674 (D.C.Cir. 1985). Plaintiff has not demonstrated the existence of imminent injury. As defendants assert, disclosure of safety and effectiveness data is not available to the public as a matter of course but can only be made available pursuant to requests from interested individuals. Should there be such a request, FDA's own regulations provide the NDA holder an opportunity to object to disclosure where there is an issue as to its confidentiality. The regulations further provide for a period within which the NDA holder may seek judicial review of any agency decision to release the data. *See* 21 C.F.R. §§ 20.45, 20.46. Hence, the concerns expressed by plaintiff regarding the immediacy of alleged irreparable harm are not persuasive.

Turning next to plaintiff's claims of economic injury, it is "well-settled that economic loss does not, in and of itself, constitute irreparable harm." *Wisconsin Gas, supra,* at 674. Moreover, plaintiff's claim that it will suffer a loss of sales should an ANDA be approved and drug product marketed before this case is disposed of on the merits is pure speculation. Plaintiff has also failed to provide any proof of economic loss and merely states that it would probably lose 20 to 30 percent of its market during the first year. The Court finds that plaintiff has not adequately demonstrated that it will suffer irreparable harm if this extraordinary relief is not issued.

## C. *Other Criteria for Preliminary Injunctive Relief*

Plaintiff has also failed to demonstrate that the granting of injunctive relief will not significantly harm other interested parties. Other potential ANDA holders may have relied on official information published by the FDA that the Desyrel NDA had been approved on December 24, 1981, and that there was no non-patent exclusivity periods that applied to the product. If the Court were to grant the requested relief, these ANDA holders suffer delay from obtaining approval and marketing generic copies of Desyrel. They would, presumably, lose profits from not being able to sell their products. Although plaintiff states that any delay would likely be insignificant, it offers no support for its assertion.

With regard to the public interest, plaintiff contends that any delay of the date of ANDA approvals would not deny any member of the public drug therapy because Desyrel would remain available for purchase. Plaintiff's argument misses the mark. Any delay in the approval and marketing of generic copies of Desyrel appears to run counter to the public interest. One of the primary reasons Congress enacted the 1984 Amendments was to increase the availability of generic copies of marketed drug products in order to increase competition and save money for the American consumer. Thus, plaintiff has not demonstrated that the public interest will be served by a grant of the relief sought.

Accordingly, the motion of plaintiff for a preliminary injunction must be denied. An Order consistent with this Memorandum Opinion will be entered this date.