NORTHWEST FOREST RESOURCE
COUNCIL, Plaintiff,

v.

ESPY, et al., Defendants.

Civ. A. No. 93–1621.

United States District Court,
District of Columbia.

March 21, 1994.

Stanley M. Gorinson, Preston, Gates, Ellis,
Roulevas & Meeds, Washington, DC, Mark
C. Rutzick, Preston, Thorgrimson, Shidler,
Gates. & Ellis, Portland, OR, for plaintiff.

Jeffrey Todd Sprung, U.S. Atty.'s Office,
Robert S. Whitman, U.S. Dept. of Justice,
Washington, DC, for Mike Espy.

David Jay Anderson, C. Gail Walker; Jeffrey Todd Sprung, Robert S. Whitman, U.S.
Dept. of Justice, Civ. Div., Washington, DC,
for defendants.

Charles Henry Carpenter, Pepper, Hamilton & Scheetz, Washington, DC, for Native
Forest Council amicus.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

In two recent cases six federal justices and judges have written at length on the problem presented in this case, namely, the implications of the constraints placed by the Federal Advisory Committee Act ("FACA" or "the Act"), 5 U.S.C.App. 2 (1988), on the President's ability to solicit and receive collective advice privately and without formality.[1] Their several opinions developed most of the research and reasoning that underlies this decision as well, and it need not, therefore, be reiterated here. Superficially characterized, however, their scholarship in the aggregate has revealed FACA to be an uncomfortably broad statute, dating from 1972, that would, if literally applied, stifle virtually all non-public consultative communication between policy-making federal officials and a group of any two or more other people, any one of whom is not in government service. As a result, the majority opinions in those cases were at pains to elide the literal reading of FACA to avert what those courts believed were surely legislatively unintended consequences on the one hand, or a major constitutional issue on the other.

This case arises upon yet another attempt by the Executive Branch to escape the toils of FACA in formulating the current Administration's policy for the future of over 24 million acres of federally owned forest lands in the states of Oregon and Washington. The plaintiff Northwest Forest Resource Council ("NFRC") is a not-for-profit association incorporated in Oregon representing the interests of the timber and other forest products industries in the two states. Defendants are the U.S. Secretaries of Agriculture and Interior, a group of individuals comprising the object of this suit, an entity known as the Forest Ecosystem Management Assessment Team ("FEMAT"), and FEMAT's chairman, a research wildlife biologist with the U.S. Forest Service.

Plaintiff alleges that, as convened and employed by the President, FEMAT constituted an "advisory committee" within the contemplation of FACA which, if so, then entitled NFRC (and the public generally) to certain rights to be (or to have been) privy to and to have participated in FEMAT's proceedings. Having been denied those rights while FEMAT was engaged in preparing a document, published in July, 1993, upon which the defendant secretaries will, at the President's direction, in major part rely in establishing and implementing a "Forest Plan," NFRC asks this Court to declare FEMAT to have been an "advisory committee" and accord NFRC as many of those rights as possible *nunc pro tunc;* to declare FEMAT's proceedings null and void for failure to comply with FACA; and to enjoin defendants from any reliance upon FEMAT's report in managing federal forest lands unless and until FEMAT complies with FACA.

Defendants respond that, for various reasons, FEMAT was never conceived, nor did it function, as an "advisory committee" under FACA, and, were this Court to find it so, then FACA itself must be deemed an unconstitutional invasion of the executive privilege for communications necessary to his exercise of the powers entrusted by the Constitution to the President. *See United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974), and *Nixon v. Administrator of General Services,* 433 U.S. 425, 449, 97 S.Ct. 2777, 2793, 53 L.Ed.2d 867 (1977).

The case is presently before the Court on cross-motions for summary judgment.[2] For

---

1. In *Washington Legal Foundation v. U.S. Dept. of Justice,* 691 F.Supp. 483 (D.D.C.1988), *aff'd on other grounds sub nom. Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989), the Supreme Court held that a privately organized and funded committee of the American Bar Association, was not "utilized," in the sense Congress intended in FACA, by the President in making appointments to the federal judiciary.

   In *Association of Am. Physicians & Surgeons v. Clinton,* 813 F.Supp. 82 (D.D.C.) *reversed and*

   *remanded,* 997 F.2d 898 (D.C.Cir.1993) ("*AAPS*"), the D.C. Circuit held that the President's spouse could be deemed a *de facto* officer or employee of the federal government, thus making FACA inapplicable to a task force otherwise comprised of federal officials advising the President on health care reform.

2. Also pending is defendants' motion to dismiss the claims made in certain counts of the amended complaint, on the grounds that plaintiff lacks standing to assert those claims and the non-

the reasons to follow the Court will grant plaintiff's motion for summary judgment in part, deny the defendants' motion for summary judgment, and grant the relief hereinafter set forth.

## I.

The material facts are of record and are not genuinely in dispute. On April 2, 1993, President Clinton, Vice President Gore, and other government officials (including the defendant Secretaries) attended a day-long "forest conference" in Portland, Oregon, to address the long-standing controversy between environmentalists and the forest products industry over the uses to be made of federal forest lands. At the conclusion of the conference, the President announced that the Administration planned to "begin work immediately to craft a balanced, a comprehensive, and a long-term policy" toward forest management. Concurrently (or nearly so) with the President's announcement, Katie McGinty, Director of the White House Office of Environmental Policy, in the Executive Office of the President, established an interagency group called the Forest Conference Executive Committee ("Executive Committee") to direct and supervise the work of FEMAT, which was then already in the formative stages. Ms. McGinty chaired the Executive Committee. Other active members of the Executive Committee included Thomas Collier, Chief of Staff of the Interior Department, James Lyons, Assistant Secretary of Agriculture for Natural Resources, and five other sub-Cabinet officials. The Executive Committee instructed FEMAT to identify management alternatives, employing an "ecosystem" approach, to attain the "greatest economic and social contribution from the forests." Defendant Jack Ward Thomas, a biologist with the U.S. Forest Service, was named the leader of FEMAT and reported weekly on FEMAT's progress to the Executive Committee.

FEMAT was composed of six subteams whose participants admittedly included private contractors paid with federal funds. FEMAT also established 14 advisory subgroups to provide it with biological impact assessments on various forms of plant and animal life. Altogether somewhere between 600 and 700 people contributed in some way to FEMAT's work. The subteams and each of the advisory subgroups eventually had benefit of the services of some non-federal personnel, and although the parties are not in agreement as to which of the 600–700 individuals should be counted as "members" of FEMAT for purposes of FACA, in May, 1993, the Administration released a list of 37 FEMAT participants who defendants are presently willing to acknowledge must be deemed "members." At least five of those people, defendants also concede, were not regular federal employees. They were Norman Kenneth Johnson, Brian Greber, and George Stankey, full-time faculty members at Oregon State University, and Margaret Shannon and Jerry Franklin, both on the faculty of the University of Washington. None of those professors took leaves of absence from their institutions while working for FEMAT; all continued to receive their full faculty paychecks, and they or their universities were paid varying sums by the federal government.[3]

On July 1, 1993, President Clinton announced his "Forest Plan for a Sustainable Economy and a Sustainable Environment" ("Forest Plan") which is based in significant part on Option 9, one of the ten forest management "options" presented by FEMAT in its Report. On July 16, 1993, the Forest Service released the FEMAT Report of over

---

justiciable character of the relief they seek. The Court concludes that NFRC has standing, *a fortiori* as the plaintiffs had standing in *Public Citizen, see* 491 U.S. at 448–51, 109 S.Ct. at 2563–65, and that the disposition on the merits herein makes it unnecessary to address the issue of justiciability.

**3.** Defendants estimate the total cost to the government of FEMAT at $3.1 million, of which approximately $443,000 (14%) was paid for non-federal contractors' services.

Expenditures were made for office space rental, travel, computers, overtime, and support services, as well as for salaries of replacements for

1,000 pages,[4] and an ensuing "Draft Supplemental Environmental Impact Statement" analyzed only the FEMAT-sanctioned options with Option 9 appearing as the preferred alternative.

The final policy embodied in the Forest Plan is expected by all parties to go into effect on March 31, 1994, pursuant to the order of another district judge. *See Seattle Audubon Soc'y v. Moseley,* 798 F.Supp. 1484 (W.D.Wash.1992).

## II.

■ The defendants first argue that FEMAT was simply not an "advisory committee" or not the sort of "advisory committee" with which FACA is concerned. But FACA itself defines an "advisory committee" to which it applies as "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or subgroup thereof" that is "established or utilized" by the President or an agency "in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal government." 5 U.S.C.App. 2 § 3(2).

By any fair interpretation of the facts and certainly by a literal reading of the statutory definition, FEMAT was an "advisory committee" within the contemplation of FACA in form and function, unless elsewhere excepted in the statute. It *was* a consultative assembly of knowledgeable persons for a specific purpose; calling it a "team" does not alter its nature. It *was* both "established" and "utilized" by the President for his guidance in devising a forest management policy. And it did render him "advice" and "recommendations" which he accepted and followed.

Elsewhere in the statute, however, conclaves identical to FEMAT are excluded from the status of being "advisory committees," and exempted from any obligations as

such, if, *but only if,* they are "composed *wholly* of full-time officers or employees of the Federal Government." 5 U.S.C.App. 2 § 3(2)(iii) (emphasis added). In other words, FACA does not apply if *all* of the people assembled to advise the President are already in government service.

As the Supreme Court observed in *Public Citizen,* "FACA was enacted to cure specific ills, above all the wasteful expenditure of public funds for worthless committee meetings and biased proposals." *Public Citizen,* 491 U.S. at 453, 109 S.Ct. at 2566. Simply expressed, the counsel of persons who have been "appointed in the civil service," *see* 5 U.S.C. §§ 2104, 2105, costs the government nothing more in the way of compensation; their conduct is strictly hedged about by statute and rule to protect against temptation to profit financially from the advice they give; and they ostensibly have no parochial interests to serve apart from the general public good.[5]

In attempting to stretch the language of FACA's exception for committees "composed wholly of full-time officers or employees of the federal government" to reach FEMAT, however, the defendants take the concept of being in federal service to a meaningless extreme. They submit that the five outsiders, the professors who contributed to the work of FEMAT (and the only contributors they will concede to have been "members" of it) should still be regarded as "officers or employees of the federal government" within the meaning of the exception, because, as faculty at state universities, they were "state employees," and as such *could* have been "assigned," under an unrelated statute, 5 U.S.C. § 3372 (1988), to engage in the performance of a federal function had it occurred to anyone that it might be necessary. But the presence of state employees on an advisory panel has, notwithstanding 5 U.S.C.

---

federal employees detailed to FEMAT for extended periods.

**4.** The FEMAT Report itself lists 104 names of major contributors to it, 24 of whom were not regular federal employees, although some of the 24 provided only clerical or support services.

**5.** Conversely, as another judge has put it, "[b]ecause committees not composed exclusively of

federal officers and employees have members who are not required to foreswear their private associations and insulate themselves against potential conflicts of interest, FACA requires, as an alternative check, that their deliberations be conducted in the open." *AAPS,* 997 F.2d at 921–22 (Buckley, J., concurring).

§ 3372, not saved such panels from FACA in the past. *See Center for Auto Safety v. Cox,* 580 F.2d 689 (D.C.Cir.1978). Moreover, none of the five professors *were* ever officially assigned federal duties, and none of the formalities that would be expected to attend such assignments were ever observed. *See* 5 U.S.C. § 3374.

Even if the Court were to find that the state university professors were "federal employees," they would not qualify as being "full-time" unless, as the defendants propose, they be given credit for full-time work because they each averaged over 40 hours per week for FEMAT during its existence. But the exception for "full-time officers and employees" only supports the purposes of FACA if the term as used in FACA is interpreted as drawing a distinction between *regular* civil servants and outsiders or hybrids; it clearly has no place in FACA as a wage-and-hour rule. As the *AAPS* court noted, "FACA would be rather easy to avoid if an agency could simply appoint 10 private citizens as special government employees for two days, and then have the committee receive the section 3(2) exemption as a body composed of full-time government employees." *AAPS,* 997 F.2d at 915.

The defendants then submit that academics on advisory committees shouldn't count as outsiders, because they do not implicate Congress' underlying concern that advisory committees not be dominated by "industry leaders and the like with substantial parochial interest in the outcome." *Natural Resources Defense Council, Inc. v. Herrington,* 637 F.Supp. 116, 120 (D.D.C.1986). Nowhere, however, does FACA or its history support the proposition that the only special interests with which Congress was concerned were those inspired by mercenary motives. Scholars no less than business people have been known to have personal agendas. And the composition of FEMAT, as a whole—federal and otherwise—at least suggests, as plaintiff alleges, that the vast majority of them were pro-"ecosystem management," having minimal sympathy for the forest products industry.

The defendants next argue that FEMAT was not an "advisory committee" because it made only a "technical assessment" of various management options, but did not provide "policy advice." The Court finds, however, that FEMAT absolutely did render policy advice to the President. FEMAT's mandate was to develop and analyze the effects of alternative ecosystem management policy options for presentation to the Administration, and it did so. The Administration considered, so far as is shown, only the work of FEMAT in selecting a policy to implement, and chose one of the options FEMAT proposed. FEMAT directly influenced the President's ultimate policy decision.

Moreover, there is nothing in the statutory language or case law to support the defendants' assertion that FACA should not apply to "advisory committees" consisting only of technicians who supply the decision-makers with data. To the contrary, several courts have applied FACA in just such circumstances. *See Public Citizen v. National Advisory Committee on Microbiological Criteria for Foods,* 886 F.2d 419 (D.C.Cir.1989) (FACA applied to committee to develop microbiological criteria by which the safety and wholesomeness of food could be assessed); *National Nutritional Foods Ass'n v. Califano,* 603 F.2d 327 (2d Cir.1979) (single meeting of five experts in the field of obesity research was subject to FACA).

## III.

Having concluded that FEMAT was subject to FACA, the Court also finds that FEMAT was convened and did its work in violation of the Act's requirements for the proper conduct of "advisory committee" business. Indeed, it is undisputed that: FEMAT refused to open its meetings to NFRC and the public in violation of section 10(a)(1); FEMAT failed to publish notice of meetings in the Federal Register contrary to section 10(a)(2); FEMAT failed to allow volunteers to attend meetings or otherwise participate in its activities in violation of section 10(a)(3); FEMAT failed to make its records and other documents available for public inspection as prescribed by section 10(b); FEMAT failed to keep detailed minutes of meetings in violation of section 10(c); the establishment of FEMAT was not properly authorized as re-

quired by section 9(a); FEMAT failed to file an advisory committee charter in violation of section 9(c); FEMAT made no attempt to fairly balance its membership as required by section 5(b)(2); FEMAT took no special precautions to assure that its advice and recommendations were not inappropriately influenced by special interests in violation of section 5(b)(3); and FEMAT did not comply with the termination provisions of sections 10(d) and 14.

## IV.

The defendants argue that if, as the Court has found, FEMAT was an "advisory committee" under FACA whose advice was integral to the Administration's decision to adopt the Forest Plan, the application of FACA to the FEMAT proceedings would transgress the constitutional doctrine of the separation of powers, thus rendering it inevitable that the Court must declare the statute unconstitutional as applied.

Both the Supreme Court majority in *Public Citizen* and the D.C. Circuit majority in *AAPS* were able, by adroit semantics and near-clairvoyant discernment of legislative intent, to avoid that drastic result in the circumstances of those cases, but not, however, without difficulty, and in doing so incurred stern disapprobation from concurring brethren who were less squeamish. In *Public Citizen*, the Supreme Court employed a narrow construction of the word "utilized" (as in "utilized by the President" in FACA) to avoid the constitutional implications of applying FACA to a privately organized and funded group of "advisors" who had, for years before FACA, been regularly offering its opinions of prospective federal judges to the Department of Justice. Proceeding on an opposite tack, the *AAPS* court adopted an expansive definition of the term "federal officer or employee" as used in FACA to embrace the President's spouse *de facto* to enable the court to avoid a similar constitutional dilemma. Had she not been deemed such, her presence on the Health Care Task

Force—the sole "outsider"—would have subjected the Task Force to FACA despite its "operational proximity to the President himself." *AAPS,* 997 F.2d at 909.[6]

This Court has, however, rejected the opportunities offered by defendants to engage in similar creative statutory construction and interpretation, and no others have manifested themselves spontaneously. Nevertheless, the importance of avoiding the constitutional issue to the last, acknowledged by both the *Public Citizen* and *AAPS* courts, 491 U.S. at 465–67, 109 S.Ct. at 2572–73; 997 F.2d at 912, n. 12, must still be respected if at all possible, and the avenue by which escape lies for this Court is found in the measure of the remedy to be given on the plaintiff's complaint.

FACA itself does not prescribe remedies for violations of its requirements. Thus, the Court must exercise its general equitable powers (while observing its own constitutional limitations) to fashion any relief that would represent an appropriate remedy for plaintiff's injuries caused by the violation of FACA. *Franklin v. Gwinnett County Public Schools,* — U.S. —, — – —, 112 S.Ct. 1028, 1033–35, 117 L.Ed.2d 208 (1992).

NFRC has prayed for the following relief:

1. a declaratory judgment to the effect that FACA was violated by FEMAT as set out above;

2. an order that defendants make all FEMAT records immediately available to plaintiff, whether or not the documents would be subject to a FOIA exemption;

3. an order directing FEMAT to issue a report summarizing its activities at meetings, as required by section 10(d);

4. an order directing the leader of FEMAT to prepare detailed minutes of each meeting; and

5. an order prohibiting the government from utilizing the FEMAT report as a basis for federal policy or regulations until FE-

---

**6.** The Court notes in passing that the decision-making apparatus employed by the President in *AAPS* is not dissimilar to that involved here. As the Health Care Task Force was to the "working group" in *AAPS*, so the Executive Committee is

to FEMAT in this case, and the *AAPS* court made clear that the constitutional implications of applying FACA to the "working group," as distinguished from the Task Force, were greatly diminished.

MAT completes an advisory process in compliance with FACA.

No reason is shown not to enter the requested declaratory judgment; indeed, if there is any conclusion inevitable from the foregoing, it is that the declaratory judgment prayed must be given.

As to production of all FEMAT documents, the defendants claim that they have assembled all documents from all 600–plus FEMAT "participants," and that those documents which are not subject to FOIA exemptions are now publicly available. Plaintiff has a separate FOIA request pending. It will fall to any reviewing court to determine the merit of the defendants' decisions to withhold any documents on FOIA-exemption grounds when administrative appeals are exhausted.

■ As to plaintiff's request for preparation of a final report and the minutes of meetings, the defendants contend that the FEMAT Report itself satisfies the requirements of section 10(d) and that preparation of some comparable document at this late date would be redundant, superfluous, and overly burdensome; the FEMAT Report constitutes a sufficient "summary of [the committee's] activities and such related matters as would be informative to the public," say defendants, and the Court agrees.

To the extent that plaintiff seeks the minutes of meetings to reveal FEMAT's internal deliberations and decisionmaking processes, there are, as plaintiff itself acknowledges, more effective ways to gather this information. There is, moreover, no evidence that any "minutes," as such, exist.

■ Finally, plaintiff seeks an order enjoining the Administration from relying upon the FEMAT report to promulgate regulations implementing its Forest Plan. Such an injunction is, of course, the relief of which plaintiff is most desirous. In the Court's opinion, however, such an injunction would exceed the injury presently to be redressed. There is nothing in the record to suggest that the FEMAT Report, or its advice and recommendations to the President, would

have in any way been altered had FACA been complied with to the letter. It would, moreover, be premature. At the moment the Forest Plan is merely a plan; it has yet to be translated into action. There will be time enough when the Forest Plan is implemented to determine if any harm it does to NFRC and its constituents can be traced to FEMAT.

Of greatest significance to the Court in declining to issue the injunction is the affront it would represent to the separation-of-powers principle. The Court is aware of no authority upon which it could confidently rely in concluding that it may forbid the President and his Cabinet to act upon advice that comes to them from any source, however irregular.[7] There is no "exclusionary rule" applicable to the decisionmaking processes of the President. And it is certainly no less presumptuous than would be a similar instruction from Congress to the President—as plaintiff deems FACA to be—as to what he can and cannot consider in executing the duties of his office.

It is sufficient for present purposes, and all that this Court concludes it should award, that plaintiff have the declaratory judgment it has prayed for. The effect and consequences of that judgment will be left to other courts and/or other cases.

It is, therefore, this 21st day of March, 1994,

ORDERED, that defendant's motion for summary judgment is denied, and plaintiff's motion for summary judgment is granted in part; and it is

FURTHER ORDERED, ADJUDGED and DECREED, that the Forest Ecosystem Management Assessment Team was and is an advisory committee subject to the Federal Advisory Committee Act, 5 U.S.C.App. 2 (1988), and that its proceedings from approximately April 2, 1993, to July 16, 1993, were conducted in violation of the Act.

---

7. *But see Alabama–Tombigbee Rivers Coalition v. Fish and Wildlife Service,* Civil No. 93–AR–2322–

S (N.D.Ala.) (December 22, 1993).