**SOFAMOR DANEK GROUP, INC., Plaintiff,**

v.

**J. Jarrett CLINTON, et. al. Defendants.**

**Civ. A. No. 94–1120 (GK).**

United States District Court, District of Columbia.

Dec. 6, 1994.

---

5. Plaintiff knew about the report of his drug infraction by June 4, 1991. *See supra.*

James Dabney Miller, Edward M. Basile, Paul J. Larkins, Jr., and Susan L. Heilbronner, King & Spalding, Washington, DC, for plaintiff.

Elizabeth Ann Pugh, Eric D. Goulian, U.S. Dept. of Justice, Civ.Div., and Mary Mitchell Armstrong, Office of General Counsel, U.S. Dept. of Health and Human Services, Washington, DC, for defendants.

### MEMORANDUM–OPINION

KESSLER, District Judge.

### I. Introduction and Procedural History

This action for declaratory and injunctive relief is brought under the Administrative Procedure Act, 5 U.S.C. § 701 et. seq., the Federal Advisory Committee Act (FACA), 5 U.S.C. app. 2 § 1 et. seq., and the Freedom of Information Act (FOIA), 5 U.S.C. § 552.[1] Plaintiff Sofamor Danek, through wholly-owned subsidiaries, develops and manufactures prescription medical devices used in spinal surgery. Defendant Department of Health and Human Services (HHS)—through the Agency for Health Care Policy and Research (AHCPR), the Forum for Quality and Effectiveness in Health Care (Forum), and the Expert Panel on Low Back Problems in Adults (Low Back Panel)—has completed development of a Clinical Practice Guideline (CPG) on low back problems (Low Back CPG).

In brief, Plaintiff seeks to bar Defendants from publishing, disseminating, or in any way relying on the CPG for Acute Low Back Pain, on the grounds that the CPG has been generated by an expert panel convened and operated in violation of the public-access requirements of the Federal Advisory Committee Act.

Plaintiff filed its Complaint on May 24, 1994. On July 18, 1994, Defendants answered. On August 1, 1994, Plaintiff filed its Motion for Summary Judgment, and Defendants filed their Cross–Motion for Summary Judgment on August 12, 1994. On September 16, 1994, Plaintiff filed an Unopposed Motion to Expedite Consideration of This Matter, and, after Defendants filed a Notice that the Low Back CPG was scheduled to be distributed on December 8, 1994, Plaintiff filed a Motion for Preliminary Injunction as well as a Request for Expedited Hearing. Defendants filed their Opposition to Plaintiff's Motion for Preliminary Injunction on November 30, 1994.

Because the Court finds that the Cross–Motions for Summary Judgment can be decided on the papers and on the case file in its entirety, and that consequently no oral hearing is necessary, the Court **denies** Plaintiff's Request for an Expedited Hearing (33–1).

Accordingly, this matter is now before the Court upon Plaintiff's Motion for Preliminary Injunction (2–2); Defendants' Motion for Summary Judgment (15–1); and Plaintiff's Motion for Summary Judgment (27–1). The Court has considered the Motions, Oppositions, Replies, and the case file in its entirety, as well as the case law relevant to this action.

For the reasons stated below, Plaintiff's Motions for Preliminary Injunction and for Summary Judgment shall be denied, and Defendants' Motion for Summary Judgment shall be granted.

### II. Statement of Facts [2]

Plaintiff Sofamor Danek, Inc. (Sofamor Danek), through its subsidiaries, develops,

---

**1.** After Sofamor Danek filed its Complaint, the government complied with Sofamor Danek's request under FOIA. Sofamor Danck therefore is not pursuing that claim. *See* Plaintiff's Motion for Summary Judgment at 4.

**2.** The parties filed a Statement of Material Facts Not In Dispute on July 29, 1994. Additionally,

manufactures and distributes medical devices, including instruments used in lumbar spinal fusion surgery to treat spinal disorders. Complaint, ¶ 7.

The Agency for Health Care Policy and Research (AHPCR) is an agency of the United States Public Health Service, Department of Health and Human Services. Congress established the AHCPR in the Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub.L. No. 101–239, § 6103, § 901, 103 Stat. 2189 (1989), which amended the Public Health Service Act, 42 U.S.C. §§ 201–300ff–90.[3] Congress intended the AHCPR to improve the quality, appropriateness, and effectiveness of health care services, and to improve access to such services. 42 U.S.C. § 299(b). To carry out that objective, Congress directed the AHCPR to facilitate development of CPGs, guidelines that would establish parameters for diagnosing, treating, managing, and preventing selected conditions. 42 U.S.C. § 299b–2(a).

Congress required that the CPGs be based on a comprehensive review of the best scientific research and professional judgment and that they be presented in formats appropriate for use by physicians, health care practitioners and providers, medical educators, and medical review organizations. 42 U.S.C. § 299b–1(b). The AHCPR defines clinical practice guidelines (CPGs) as "systematically developed statements to assist practitioner and patient decisions about appropriate health care for specific clinical circumstances." AHCPR Program Note (August 1993) at 1, Attached as Exhibit 1 to Defendants' Motion for Summary Judgment.

Congress in the OBRA also established the Forum for Quality and Effectiveness in Health Care (Forum). Through the Forum, the AHCPR oversees the development, periodic review and updating of the CPGs. 42 U.S.C. § 299b. Based on the guidelines produced, the Forum oversees development of medical review criteria, standards of quality, and performance measures which assist health care providers to assess or review the provision of health care. AHCPR Program Note, supra, at 1.

Congress directed the AHCPR to develop CPGs through the establishment and operation of panels of medical experts and consumers. 42 U.S.C. § 299b–2. The AHCPR facilitates the development of CPGs in two ways: it either itself convenes multidisciplinary private-sector panels of experts and health care consumers, or it contracts with public or private nonprofit organizations to convene panels of experts. AHCPR Program Note, supra, at 2.

On March 18, 1991, the AHCPR announced in the Federal Register that it was establishing a panel of experts and health care consumers to develop clinical practice guidelines for low back disorders and related conditions and invited nominations of qualified individuals to serve as chairperson(s) and as panel members. 52 Fed.Reg. 11452 (March 18, 1991).

On April 22, 1992, Dr. James Mason, Assistant Secretary for Health at HHS announced the formation of an AHCPR sponsored 23–member panel of private-sector health care experts and consumers to develop clinical practice guidelines for diagnosing and treating low back problems.

On July 24, 1992, the AHCPR announced in the Federal Register that a public meeting would be held on September 16, 1992 to receive comments and information pertaining to the development of the clinical practice guidelines on Low Back Problems. 57 Fed. Reg. 32991 (July 24, 1992).

Sofamor Danek, by letter from its counsel dated November 1, 1993, informed the AHCPR that it believed the Expert Panels convened to develop clinical practice guidelines, including the Low Back Problems Panel, were advisory committees subject to the procedures and requirements of the Federal

the Court treats all facts that were not disputed as conceded pursuant to Federal Rule of Civil Procedure 56 and Local Rule 108(h).

3. AHCPR was reauthorized and its enabling statute was amended by the AHCPR Reauthorization Act of 1992, Publ.L. No. 102–410, 106 Stat. 2094 (1992). The Reauthorization Act requires that the Forum and each of its CPG panels consider the costs of the CPGs. Id. at §§ 5(a)(1)(C) and 5(a)(2).

Advisory Committee Act (FACA), 5 U.S.C.App. 2.

In a letter to Sofamor Danek dated November 10, 1993, Dr. Jarrett Clinton, then the Administrator of AHCPR, stated that the clinical practice guideline panels are not advisory committees within the meaning of FACA and therefore not subject to FACA's procedural requirements. Representatives of Sofamor Danek and the Department of Health and Human Services met on March 28, 1994. By letter dated April 29, 1994, Beverly Dennis, the Deputy General Counsel at HHS, informed counsel for Sofamor Danek that it continued to be HHS's opinion that the clinical guideline panels are not advisory committees within the meaning of FACA.

After more than two years of work and study, the Low Back Problems Panel has now completed the development of the CPG on low back problems. Along with the CPGs, the AHCPR will publish and disseminate a Quick Reference Guide for Physicians and a Patient's Guide. The AHCPR will publish and disseminate the CPG on low back problems and its accompanying documents without charge to physicians, health care practitioners and providers, medical educators, and medical review organizations. The CPG on low back problems will also be available through the AHCPR Publications Clearinghouse. Individuals or organizations may call a toll-free number or write the Clearinghouse, and the Clearinghouse will send the CPG, the Clinician's Guide, or the Patient Guide to the requestor without charge. Expenses of the Clearinghouse, the toll-free number, and the printing and dissemination of CPG documents are borne by the AHCPR. Deposition of Carole Hudgings

at 83–84; AHCPR Program Note, *supra,* at 4.

The Government has formally notified the Court that it intends to release the Low Back CPG on December 8, 1994.

## III. Plaintiff's Motion For Summary Judgment Must Be Denied, and Defendants' Motion for Summary Judgment Must Be Granted

### A. Statutory Background

Congress enacted FACA in 1972 to control the growth and ensure openness of operation of the "numerous committees, boards, commissions, councils and similar groups which have been established to advise officers and agencies in the executive branch of the Federal Government." 5 U.S.C.App. 2 § 2(a); *see generally Public Citizen v. Department of Justice,* 491 U.S. 440, 466, 109 S.Ct. 2558, 2572–73, 105 L.Ed.2d 377 (1989). To achieve these objectives, the FACA places a number of procedural restrictions on those bodies that constitute "advisory committees." [4] The statute defines an advisory committee as follows:

[A]ny committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof (hereafter in this paragraph referred to as "committee"), which is—

(A) established by statute or reorganization plan, or

(B) established or utilized by the President, or

(C) established or utilized by one or more agencies,[5]

in the interest of obtaining advice or recommendations for the President or one

---

**4.** Unless the "advisory committee" is composed entirely of full-time federal officers or employees, 5 U.S.C.App. 2 § 3(2)(C)(iii), it must file a detailed charter setting forth its objectives and the scope of its activity, *id.* § 9(c), give advance notice in the Federal Register of any meetings, *id.* § 10(a)(2), hold all meetings open to the public, *id.* § 10(a)(1), keep detailed minutes of each meeting, *id.* § 10(c), make its records available to the public in accordance with the Freedom of Information Act, 5 U.S.C. § 552, *id.* § 10(b), be "fairly balanced in terms of the points of view

represented and functions to be performed," *id.* § 5(b)(2), and "not be inappropriately influenced by the appointing authority or by any special interest." *Id.* § 5(b)(3).

**5.** "Agency" is defined by reference to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1). 5 U.S.C.App. 2 § 3(3). Under the APA, " 'agency' means each authority of the Government of the United States." 5 U.S.C. § 551(1).

or more agencies or officers of the Federal Government. . . .

5 U.S.C.App. 2 § 3(2).

Plaintiff makes two arguments that FACA applies in this case. First, Plaintiff argues that the CPG panels were "established by statute"—that is, the OBRA—in the interest of obtaining advice or recommendations. Second, Plaintiff argues that the Low Back Panel will be "utilized" by one or more agencies in the interest of obtaining advice or recommendations. As is explained below, both arguments fail.

**B.** *The CPG Panels Were Not Established By Statute In The Interest Of Obtaining Advice Or Recommendations*

 Although Plaintiff argues that the CPG panels are established by the OBRA, these panels are, in fact, established by the AHCPR. In the OBRA, Congress directed the AHCPR to provide for the development of clinical practice guidelines by expert panels, which can be convened by the Agency itself or by outside contractors. *See* 42 U.S.C. § 299b-2(a). OBRA's legislative history confirms this common-sense interpretation: "The Forum can *either* convene panels *or* contract with appropriate groups that satisfy criteria established for this purpose." H.R.Rep. No. 247, 101st Cong., 1st Sess. 378, *reprinted in* 1989 U.S.Code Cong. & Admin.News 1906, 2104 (emphasis added) (Plaintiff's Exhibit 23, attached to Plaintiff's Motion for Summary Judgment). The statute is obviously not self-executing. The CPGs constitute the final work product of the panels. The statute gives the Agency discretion to decide whether these panels will be convened by outside contractors or by the Agency itself. Given the fact that Congress gave the Agency the freedom to decide on the procedure to be used in convening the panels, it follows that the panels are to be established by the Agency and have not been established by the statute. If the panels were established by statute, as Plaintiff argues, there would be no point in giving the Agency the discretion which Congress has accorded it with regard to the manner of establishing these panels.

Accordingly, because this Court finds that the CPG panels, including the Low Back Panel, were not established by statute, but were rather established by an agency—the AHCPR—Plaintiff's first argument must fail.

**C.** *The CPG Panels Were Not Established, And Will Not Be Utilized To Provide Advice To The Federal Government*

 Defendants do not dispute that CPG panels are both "established" and "utilized" by "one or more agencies"—that is, the AHCPR. What Defendants do dispute is Plaintiff's argument that the CPG panels are established or utilized "in the interest of obtaining advice or recommendations for . . . one or more agencies or officers of the Federal Government."

The plain language and purpose of the OBRA, together with the record evidence of what the CPG panels do, demonstrate the correctness of Defendants' contention that the low back CPG panel was not established or utilized to render advice to the federal government. Rather, Congress authorized AHCPR to establish CPG panels for the express purpose of advising doctors and other health care practitioners on the appropriate treatment of medical diseases and disorders. Although some federal agencies, after completion of the CPGs, may find them useful for other purposes, such as formulating reimbursement policy, the fact remains that CPG panels are not established for the purpose of advising those federal agencies.

The statutory language in the OBRA makes clear that the CPGs were designed to provide advice to private practitioners, educators and consumers rather than to the federal government. Specifically, the statute defines the CPGs as

clinically relevant guidelines that *may be used by physicians, educators, and health care practitioners* to assist in determining how diseases, disorders, and other health conditions can most effectively and appropriately be prevented, diagnosed, treated, and managed clinically; . . .

42 U.S.C. § 299b-1(a)(1) (emphasis added). AHCPR's own operative definition of CPGs

is consistent with this statutory mandate: "These are systematically developed statements *to assist practitioner and patient decisions* about appropriate health care for specific clinical circumstances." AHCPR Program Note at 1, attached as Exhibit 1 to Defendants' Motion for Summary Judgment (emphasis added).

This conclusion is also borne out by an examination of the Low Back Panel's CPG whose dissemination Plaintiff seeks to enjoin, a confidential draft of which was submitted to the Court. The Guideline contains absolutely no advice or recommendations for any federal agency or officer in any of its 182 pages. Rather, it summarizes the state of existing research and data on many options for diagnosing and treating low back pain and, based on that research and data, makes treatment recommendations to clinicians. *See, e.g.,* Clinical Practice Guideline: Acute Low Back Problems in Adults (Confidential Review Draft) at 2 (attached as Exhibit 7 to Defendants' Reply Memorandum in Support of their Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment) (stating that the panel divided its findings and recommendations into three chapters "to correlate with the clinical approach: (1) Initial Assessment Methods; (2) Initial Clinical Care Methods; (3) Special Studies and Diagnostic Considerations").

Although Plaintiff correctly notes that several federal agencies, such as the Health Care Finance Administration (HFCA)—an agency within the Department of Health and Human Services that oversees federal spending under the Medicare and Medicaid programs—would potentially utilize the CPG, this is not the purpose for which the CPGs were "established." Rather than focussing on the optional uses that federal agencies may make of the Low Back CPG, FACA requires that the Court inquire into the *intended purpose* of the advice—that is, whether the advice is directed to the federal government.[6] As the two recent cases cited by Plaintiff demonstrate, it is not important, in

determining whether a panel is covered by FACA, whether the federal government actually uses the panel's advice or not, as long as the advice was *directed to* the federal government. *See Alabama–Tombigbee Rivers Coalition v. Department of Interior,* 26 F.3d 1103 (11th Cir.1994) (affirming the district court's holding that FACA applies to a scientific panel established by the Interior Department to provide advice on whether to list the Alabama sturgeon as an endangered species); *Northwest Forest Resource Council v. Espy,* 846 F.Supp. 1009 (D.D.C.1994) (holding that FACA applies to the Forest Ecosystem Management Team established by the President for advice in devising a forest management policy).

Here, in contrast, the "advice" generated by expert panels at issue in this case—that is, the Low Back CPG—is not directed to the President or any agency in the federal government. As discussed above, the Low Back CPG contains medical information aimed at educators, doctors and their patients rather than the federal government. This is the task Congress directed the panels to carry out. 42 U.S.C. § 299b–1(a)(1).[7] For this reason, no matter how federal officials might eventually choose to use the Low Back CPG, the Low Back Panel is not an "advisory committee" under FACA.

Finally, this conclusion is supported by the case law. In a case that closely resembles the instant case, another Judge on this bench held that FACA did not apply to a panel of scientists convened by the federal government to offer advice regarding a discrete and narrow scientific question rather than a public policy issue. *Natural Resources Defense Council v. Herrington,* 637 F.Supp. 116, 120 (D.D.C.1986) (holding that a panel of scientists convened in order to advise the Secretary of Energy on the safety of a particular nuclear reactor did not constitute an advisory committee subject to FACA, as the scientists were convened "merely to examine, from their several perspectives of technical exper-

---

**6.** To hold otherwise would potentially subject to FACA any type of study, report, text or treatise that might be relied upon by a federal agency.

**7.** This Section, quoted on page 10 of this Opinion, makes clear that the purpose of the Guideline is "to assist" the clinical decisionmaking of "physicians, educators, and health care practitioners." *Id.*

tise," narrow scientific evidence). As in *Herrington*, this case involves a panel of scientists convened to apply their "technical expertise" to a particular medical issue rather than to any national public policy issues. Consequently, this Court concludes that the Low Back Panel does not constitute an advisory committee under FACA.

*IV. Plaintiffs' Motion for Preliminary Injunction Must Be Denied*

In order to prevail on an Application for Temporary Restraining Order or a Motion for Preliminary Injunction, the Plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) that no other parties will be harmed if temporary relief is granted; and (4) that the public interest favors entry of a temporary restraining order. *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C.Cir. 1958) (per curiam); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 843 (D.C.Cir.1977); *Sea Containers, Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C.Cir.1989); *National Treasury Employees Union v. United States*, 927 F.2d 1253, 1254 (D.C.Cir.1991). This Circuit's Court of Appeals has directed the trial court to balance, rather than mechanically apply, these factors. "A stay may be granted with either a high probability of success and some injury, or *vice versa.*" *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C.Cir.1985) *(per curiam)* (emphasis in original); *see also Holiday Tours, supra*, 559 F.2d at 843–44.

Application of the four factors stated above compels the conclusion that Plaintiffs' Motion for Preliminary Injunction must be denied. Plaintiff has failed to meet its burden with regard to each of the stated four requirements.

First, for the reasons discussed above, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits. On the contrary, this Court has concluded that the Low Back Panel does not constitute an advisory committee subject to FACA's requirements.

Second, Plaintiff cannot demonstrate any irreparable harm from publication of the Low Back CPG. In order to establish irreparable injury justifying preliminary injunctive relief, a plaintiff must establish injury that is both "certain and great." *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C.Cir.1985). The harm claimed by Plaintiff—a potential reduction in the number of "surgical interventions involving spinal fusion performed with medical devices produced by Sofamor Danek" due to the dissemination of the Low Back CPG—is both speculative and remote. *See Mead Johnson Pharmaceutical Group v. Bowen*, 655 F.Supp. 53, 56 (D.D.C. 1986), *aff'd*, 838 F.2d 1332 (D.C.Cir.1988) (rejecting as "pure speculation" a pharmaceutical company's claim in support of its Motion for Preliminary Injunction that it would suffer loss of sales if a competing generic drug were approved and marketed); *see also Northwest Forest Resource Council v. Espy*, 846 F.Supp. 1009, 1015 (D.D.C.1994) (concluding that an injunction was not justified where there was no evidence that the recommendations made by an advisory group would have been any different had FACA been complied with by the letter).

Finally, Plaintiff has failed to satisfy the third and fourth requirements for the entry of a preliminary injunction, as the relief it seeks would substantially harm both Defendants and the public interest. In seeking to enjoin the distribution of this Guideline and its accompanying explanatory materials, Plaintiff requests that the Court prevent the government from sharing with the public a source of state-of-the-art medical knowledge that would be of immediate use in treating an ailment that afflicts 15 to 20 percent of the United States population each year. Clinical Practice Guideline: Acute Low Back Problems in Adults (Confidential Review Draft) at 8 (attached at Exhibit 7 to Defendants' Reply Memorandum in Support of their Motion for Summary Judgment).

According to the draft CPG, back symptoms are "the most common cause of disability for persons under age 45." *Id.* (citation omitted). Complaints about lower back pain constitute the "second most common sympto-

matic reason expressed by patients for office visits to primary care physicians," the most common reason for office visits to orthopedic surgeons, neurosurgeons, and occupational medicine physicians, and the third most common reason for surgical procedures. *Id.* (citations omitted). Further, the loss of time as well as the disability payments for work-related back problems are said to cost up to three times as much as the medical treatment itself. *Id.* at 8–9. In sum, the annual societal cost of lower back pain is said to total as much as $50 billion. *Id.* at 9. With such a need for knowledge of the efficacy of different treatment options, Plaintiff has failed to demonstrate how the public would benefit from being denied access to the fruits of more than two years of research, review and study that have been spent compiling and examining the most recent medical knowledge regarding low back pain.

Accordingly, an injunction would be highly detrimental to the public interest, and its potential harms to the public would far outweigh the potential benefits to Plaintiff.

It is well established that injunctive relief is an "extraordinary remedy." *See, e.g., Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). As explained above, such relief is not warranted in this case. Plaintiffs' Motion for Preliminary Injunction must be denied.

## V. Conclusion

For the reasons stated above, Plaintiffs' Motions for Preliminary Injunction and for Summary Judgment shall be denied, and Defendants' Motion for Summary Judgment shall be granted.