David **FORDYCE**, et al., Plaintiffs,

v.

John E. **FROHNMAYER**, et al., Defendants.

Civ. A. No. 90–2106 (JHG).

United States District Court, District of Columbia.

May 13, 1991.

L. Walter Slaughter, Mitchell, Boyer & Associates, Annandale, Va., Larry L. Crain, John W. Whitehead, Charlottesville, Va., for plaintiffs.

Theodore C. Hirt and Lois B. Osler, Attys., Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## ORDER

JOYCE HENS GREEN, District Judge.

Plaintiffs, David Fordyce and Yvonne Knickerbocker, citizens and taxpayers of Los Angeles County, initiated this action against defendants National Endowment for the Arts ("NEA"), an independent agency created by Congress under the National Foundation on the Arts and the Humanities Act of 1965, and John Frohnmayer, at all times relevant to the instant action Chairperson of the NEA, alleging that the NEA's partial sponsorship of an art exhibition entitled "Tongues of Flame" violates the establishment clause of the first amendment. Defendants have subsequently moved to dismiss the complaint, contending that plaintiffs lack standing to pursue their claims. For the following reasons, defendants' motion is granted.

## I. BACKGROUND

According to plaintiffs' first amended complaint ("Complaint"), on or about November 14, 1988, the Director of the University Galleries of Illinois State University (the "Galleries"), Barry Blinderman, applied to the NEA for a grant of $23,300 to fund the creation of "Tongues of Flame." Although the NEA initially decided not to fund the project, on May 30, 1989, it issued a preliminary recommendation awarding a grant in the amount of $15,000 to the Galleries to fund, in part, a catalogue entitled "David Wojnarowicz: Tongues of Flame" ("Catalogue") and the exhibit. In the Acknowledgments section of the Catalogue, Blinderman confirms, "The notification of our receipt of a very generous grant from the National Endowment for the Arts last spring gave us the impetus to plan a comprehensive exhibition and catalogue. My sincerest thanks go to the panelists who recommended the award—for their insight and courage in supporting controversial artwork." Complaint, ¶ 4.5.

The Wojnarowicz exhibition was on display in January, February, and March of 1990 at the Galleries and was on display at the Santa Monica Museum of Art from July 25, 1990 through September 5, 1990. According to plaintiffs, "[a] central and recurring theme throughout the Tongues of Flame Catalogue ... is its sacrilegious, defamatory, and scurrilous depictions of the person of Jesus Christ." Complaint ¶ 4.4. As an example, plaintiffs point to an image in which Christ is shown "mainlining" heroin by injecting a hypodermic needle into his arm.

Plaintiffs hold to a form of doctrine that espouses the deity of Jesus Christ and regards Christ as the object and center of all religious devotion. They view the public display of the exhibition as an affront to their liberty to practice religion free from governmental entanglement and politically divisive governmental intrusion into the affairs of religion. Plaintiffs further contend that the images convey a message that plaintiffs, as nonadherents to the anti-religious art, are outsiders and not full members of the political community, in contravention of the establishment clause.

## II. DISCUSSION

In viewing a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The factual allegations of the complaint must be presumed true and liberally construed in favor of plaintiff. *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1506 (D.C.Cir.1984); 5A C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357, p. 304 (1990). The plaintiff is entitled to all favorable inferences which may be drawn from those allegations. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Plaintiffs assert standing as both citizens and taxpayers. A plaintiff, suing as a citizen, must allege as a basis for his or her standing to sue: (1) an injury in fact; (2) caused by, or traceable to, the challenged action; (3) which injury is likely to be redressed by a favorable judicial decision. *See Valley Forge Christian College*

*v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The injury in fact required for standing must be immediate, objective, and concrete, rather than speculative or abstract. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983). Moreover, the Supreme Court has specifically noted that merely asserting spiritual injury under the establishment clause is insufficient to support standing to sue as a citizen. *Valley Forge*, 454 U.S. at 486–87 n. 22, 102 S.Ct. at 765–66 n. 22.[1]

Lower courts have elaborated on the injury-in-fact prong discussed in *Valley Forge*. For example, in *American Civil Liberties Union v. City of St. Charles*, 794 F.2d 265 (7th Cir.), *cert. denied*, 479 U.S. 961, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986), the Court of Appeals for the Seventh Circuit found standing where plaintiffs demonstrated that they were forced to alter their behavior to avoid contact with a religious display. As that Court explained its decision, "The fact that the plaintiffs do not like a cross to be displayed on public property—even that they are deeply offended by such a display—does not confer standing, ... for it is not by itself a fact that distinguishes them from anyone else in the United States who disapproves of such displays. To be made indignant by knowing that government is doing something of which one violently disapproves is not the kind of injury that can support a federal suit." *Id.* at 268. And in *Freedom From Religion Foundation, Inc. v. Zielke*, 845 F.2d 1463, 1468–69 (7th Cir.1988), the Seventh Circuit again concluded that because appellants concededly did not alter their behavior to avoid a monument of the Ten Commandments but contended only that they suffered a rebuke to their religious beliefs, appellants did not have standing to challenge the display. Similarly, in

*Hawley v. City of Cleveland*, 773 F.2d 736, 740 (6th Cir.), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1985), the Sixth Circuit concluded that plaintiffs had standing where they undertook special burdens to avoid a chapel located in the airport. As the Court explained, "Even if they can avoid the chapel area by utilizing different concourses or stairways, this impingement on their right to use the airport is sufficient to confer standing since it would 'force them to assume special burdens' to avoid 'unwelcome religious exercises.'" *Id.* (citations omitted).

■ In their Complaint, plaintiffs claim only that they have suffered a spiritual injury and that the exhibition caused offense to their religious sensibilities. Plaintiffs do not, however, allege that they had to confront the exhibition daily, that the exhibition was visible in the course of their normal routine, or that their usual driving or walking routes took them through or past the exhibition. *See Freedom From Religion Foundation, Inc.*, 845 F.2d at 1469. In fact, plaintiffs do not even allege that they have either seen the exhibition or studied the catalogue. Under *Valley Forge* and its progeny, plaintiffs have failed to show that they have endured any special burdens that justify their standing to sue as citizens.

Plaintiffs also assert that they have standing to pursue this action under a narrow "exception" to the general rule that "taxpayers do not have standing to challenge how the federal government spends tax revenue." *In re United States Catholic Conference*, 885 F.2d 1020, 1027 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1989) (*"Catholic Conference"*); *Frothingham v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). Again, plaintiffs' argument is unavailing.

---

1. As the Supreme Court explained, "The Court's discussion of the standing issue [in *Doremus v. Board of Eduction*, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952)] is not extensive, but it is sufficient to show the error in respondents' broad reading of the phrase 'spiritual stake.' The plaintiffs in [*Abington School District v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d

844 (1963)] had standing, not because their complaint rested on the Establishment Clause—for as *Doremus* demonstrated, that is insufficient—but because impressionable schoolchildren were subjected to unwelcome religious exercises or were forced to assume *special burdens* to avoid them. Respondents have alleged no comparable injury." *Id.* (emphasis added).

In *Flast v. Cohen,* 392 U.S. 83, 101–06, 88 S.Ct. 1942, 1953–56, 20 L.Ed.2d 947 (1968), the Supreme Court determined that taxpayers may have standing to attack congressional actions taken pursuant to Congress' taxing and spending power under Article I, Section 8 of the Constitution. *Flast,* however, is a limited holding.[2] *Flast* and its progeny countenance taxpayer challenges to executive branch action where "Congress ... decided how the ... funds were to be spent, and the executive branch, in administering the statute, was merely carrying out Congress' scheme." *Catholic Conference,* 885 F.2d at 1027. Consequently, the Supreme Court rejected the argument for taxpayer standing in *Valley Forge* where the nexus between the taxpayer and the congressional action was substantially attenuated. As the Court there explained, "Unlike the plaintiffs in *Flast....* the source of their complaint is not a congressional action, but a decision by HEW to transfer a parcel of federal property." *Valley Forge,* 454 U.S. at 479, 102 S.Ct. at 762.[3]

In the instant action, the crux of plaintiffs' complaint lies with the NEA. Although plaintiffs claim in their opposition that they are attacking Congress' exercise of its taxing and spending power under Article I, Section 8 of the Constitution, they cannot contend that there was any congressional involvement in the decision to provide partial funding to the exhibition, that Congress participates in the decision to grant or deny applications for federal funding, or that the NEA merely administers a congressional directive. Rather, Congress authorized the chairperson of the NEA and the NEA to establish and administer a program of contracts, grants-in-aid, and loans with groups or individuals of exceptional talent concerned with the arts; to make the necessary artistic judgments for the grants; and to determine the level of funding for grantees. *See* 20 U.S.C. §§ 924(b), 954(c). Here, plaintiffs are challenging a decision made solely by an agency of the executive branch. As their complaint unequivocally states, "This is an action against an agency of the federal government for its violation of the Establishment Clause.... Specifically, the defendants, by authorizing the expenditure of federal funds for the creation and exhibition of a work entitled "Tongues of Flame" ... have unconstitutionally sponsored and endorsed a religion...." Complaint, ¶ 1.1. Because the nexus between plaintiffs' allegations and Congress' exercise of its taxing and spending power is so attenuated, plaintiffs cannot assert standing based on their status as taxpayers.[4]

## III. CONCLUSION

For the reasons expressed above, it is hereby

ORDERED that defendants' motion to dismiss is granted. IT IS SO ORDERED.

---

**2.** Wright and Miller note, "Fate has not been kind to the *Flast* decision. In the field of taxpayer standing, it has been limited to very narrow confines." 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 3531.1, p. 367 (1984).

**3.** Plaintiffs rely heavily on *Bowen v. Kendrick,* 487 U.S. 589, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988) in asserting their standing as taxpayers. However, *Kendrick* is distinguishable. There, Congress decided how the funds were to be spent, and the Secretary of Health and Human Services merely carried out the congressional directive. *Id.* at 617–20, 108 S.Ct. at 2578–80.

**4.** In any event, even if plaintiffs had challenged an exercise of the taxing and spending power as required by *Flast,* it does not appear that plaintiffs have suffered legally cognizable harm or that that harm is redressable. As discussed above, plaintiffs are alleging a spiritual injury. Moreover, even if plaintiffs ultimately prevailed, that outcome would not alter the total amount of taxpayer funds distributed by the NEA; the NEA's budget is, in no way, tied to funding of any particular type of artistic endeavor. As the Supreme Court found in *Valley Forge,* 454 U.S. at 480–81 n. 17, 102 S.Ct. at 762–63 n. 17 (citation omitted), "Even if respondents had brought their claim within the outer limits of *Flast,* ... they still would have encountered serious difficulty in establishing that they 'personally would benefit in a tangible way from the court's intervention.'"