Opinion for the Court filed by Chief Judge EDWARDS.
 

 HARRY T. EDWARDS, Chief Judge.
 

 Appellants — the Northwest Forest Resource Council (“NFRC”)
 
 et al.,
 
 an industry/labor/citizen coalition — appeal the District Court’s decision dismissing their claims arising out of the 1994 President’s Forest Plan.
 
 Northwest Forest v. Secretary of Agriculture,
 
 Civ. No. 93-1621 (D.D.C. May 22, 1996) (trans.),
 
 reprinted in
 
 Joint Appendix (“J.A”) 241. The District Court found that appellants’ claims were barred by the
 
 stare decisis
 
 effect of a decision by Judge Dwyer in the Western District of Washington,
 
 Seattle Audubon Soc’y v. Lyons,
 
 871 F.Supp. 1291 (W.D.Wash.1994),
 
 aff'd sub nom. Seattle Audubon Soc’y v. Moseley,
 
 80 F.3d 1401 (9th Cir.1996). Because
 
 stare decisis
 
 does not compel a district court to follow the decision of a district court in another circuit, we find that the doctrine cannot be applied here to deprive appellants of their right to be heard on the merits of their claims. The alternative rationale suggested by the Government, comity, is also inapplicable to this case, given that the appellants in the instant case include parties who did not participate in the Western District of Washington litigation. Accordingly, we reverse the judgment of the District Court and remand the case to allow the trial judge to consider whether appellants’ claims are barred by issue or claim preclusion and, if not, for a disposition on the merits.
 

 I. Baokground ,
 

 A
 
 The President’s Forest Plan
 

 This case arises out of the latest round of litigation surrounding environmental protections for the spotted owl and the management of the forests in the Pacific Northwest. In response to prior litigation ordering the government to comply with various environmental statutes,
 
 see Seattle Audubon Soc’y v. Moseley,
 
 798 F.Supp. 1484 (W.D.Wash.1992),
 
 aff'd sub nom. Seattle Audubon Soc’y v. Espy,
 
 998 F.2d 699 (9th Cir.1993);
 
 Portland Audubon Soc’y v. Lujan,
 
 795 F.Supp. 1489 (D.Or.1992),
 
 aff'd sub nom. Portland Audubon Soc’y v. Babbitt,
 
 998 F.2d 705 (9th Cir. 1993), on April 13, 1994, the Secretary of the Interior adopted a new plan for the lands
 
 *-685
 
 managed by the Bureau of Land Management (“BLM”) in western Oregon. (This plan is hereinafter referred to as “the Plan.”) The Plan was entered into jointly with the Secretary of Agriculture, who adopted a new plan applicable to some 20 million acres of Forest Service land throughout western Oregon and Washington.
 

 Anticipating that the issuance of the new 1994 management Plan would engender a host of claims, the agencies requested a status conference before Judge Dwyer, who was still presiding over part of the earlier litigation, in the Western District of Washington. The Government urged that all challenges to the Plan be decided in one court, and that the Western District of Washington was the logical forum. In a scheduling order issued shortly after the conference, Judge Dwyer expressed his view that “it is clear that all legal challenges to the [Plan] should be decided in the same district and reviewed by the same court of appeals,” but he said that no order could be entered to this effect.
 
 Seattle Audubon Soc’y v. Lyons,
 
 No. C92-479WD (W.D.Wash. Apr. 21, 1994),
 
 reprinted in
 
 J.A. 105-06.
 

 Following the announcement of the 1994 Plan, environmental groups did indeed file several challenges in the Western District of Washington. These cases were consolidated as
 
 Seattle Audubon Soc’y v. Lyons
 
 and assigned to Judge Dwyer. One of the challenges to the Plan was a continuation of one of the earlier cases that had given rise to the Plan,
 
 Seattle Audubon Soc’y v. Moseley,
 
 798 F.Supp. at 1484. In that case, NFRC, one of the appellants here, had intervened as a defendant on behalf of a previous management plan.
 

 B.
 
 The District of Columbia Litigation
 

 In May 1994, NFRC brought suit against the BLM challenging the new Plan in the District Court for the District of Columbia.
 
 See NFRC v. Dombeck,
 
 Civ. No. 94-1031 (D.D.C. filed May 11, 1994),
 
 reprinted in 3A.
 
 42. NFRC asserted 11 claims under various federal statutes. NFRC also filed a companion case,
 
 NFRC v. Thomas,
 
 Civ. No. 94-1032 (D.D.C. filed May 11, 1994), challenging the application of the Plan to the Forest Service lands in Oregon and Washington.
 

 In June of 1994, the Government moved to transfer these two eases, along with another case challenging the Plan filed by the O & C Counties, Association
 
 of O & C Counties v. Babbitt,
 
 Civ. No. 94-1044 (D.D.C. filed May 11, 1994),
 
 reprinted in
 
 J.A. 14, to the Western District of Washington, or in the alternative, to stay the cases pending resolution of the related litigation in the State of Washington. The District Court refused to transfer
 
 Dombeck
 
 or the counties’ case, finding that transfers were not permitted because these cases could not have been brought initially in the Western District of Washington.
 
 See NFRC v. Dombeck,
 
 Civ. No. 94-1031 (D.D.C. June 30, 1994) (order),
 
 reprinted in
 
 J.A. 142;
 
 Association of O & C Counties v. Babbitt,
 
 Civ. No. 94-1044 (D.D.C. June 30, 1994) (order),
 
 reprinted in
 
 J.A. 140. The District Court stayed both cases pending the conclusion of the Western District of Washington litigation. However, the District Court transferred
 
 NFRC v. Thomas,
 
 the ease challenging the application of the Plan to the Forest Service lands in Oregon and Washington.
 
 See NFRC v. Thomas,
 
 Civ. No. 94-1032 (D.D.C. June 30, 1994) (order),
 
 reprinted in
 
 J.A. 144. Shortly thereafter, the plaintiffs in that case dismissed it without prejudice under Fed. R. Civ. P. 41(a)(1).
 
 See
 
 J.A. 146.
 

 In related litigation also brought by NFRC in the District Court for the District of Columbia, the Court found that the Forest Eco-sytem Management Assessment Team(“FE-MAT”), which wrote the report that provided the basis for the 1994 Plan, violated ■ the Federal Advisory Committee Act (“FACA”), 5 U.S.C. app. (1994).
 
 See NFRC v. Espy,
 
 846 F.Supp. 1009 (D.D.C.1994). But the District Court refused to issue an injunction preventing the government from using the FEMAT’s report.
 

 C.
 
 The Government’s Cross-Claims in the Western District of Washington Litigation
 

 NFRC’s presence as a defendant-interve-nor in the ongoing 1992
 
 Seattle Audubon Society
 
 case in the Western District of Washington enabled the Government to file cross-claims against NFRC asking Judge Dwyer to enter a declaratory judgment ruling on all 11 of the original claims in
 
 NFRC v. Dombeck
 
 in
 
 *-684
 
 the District of Columbia, as well as on the claims in the dismissed
 
 NFRC v. Thomas
 
 case. Judge Dwyer permitted the cross-claims against NFRC.
 
 See Seattle Audubon Soc’y v. Lyons,
 
 871 F.Supp. 1286, 1290 (W.D.Wash.1994 ). But, he denied the Government’s motion to join the other plaintiffs in the
 
 Dombeck
 
 and
 
 Thomas
 
 suits.
 
 See id.
 
 at 1290-91. In December 1994, Judge Dwyer issued a declaratory judgment against NFRC on 9 of the original 11 claims in
 
 NFRC v. Dombeck,
 
 declaring the Plan valid as against those claims.
 
 See Seattle Audubon Soc’y v. Lyons,
 
 871 F.Supp. at 1325. At the Government’s request, he declined to rule on the other two original pending claims in this case.
 

 D.
 
 The Dismissal of NFRC’s Claims in the ' District of Columbia
 

 In February 1995, following Judge Dwyer’s decision, NFRC filed an amended complaint in
 
 NFRC v. Dombeck
 
 in the District Court of the District of Columbia, adding 2 new plaintiffs and 14 new claims, including another request for an injunction based on the FACA violations by the FEMAT.
 
 See NFRC v. Dombeck,
 
 Civ. No. 94-1031 (D.D.C. Feb. 28,1995),
 
 reprinted in
 
 J.A. 153. ÑFRC also moved to lift the stay in the
 
 NFRC v. Dombeck
 
 case. On May 22, 1996, after the Ninth Circuit had affirmed Judge Dwyer’s decision upholding the new Plan,
 
 see Seattle Audubon Soc’y v. Moseley,
 
 80 F.3d at 1406, the District Court held a status conference in
 
 Dombeck
 
 and
 
 O & C Counties.
 
 At the status conference, the District Court declined to rule on whether the
 
 Lyons
 
 litigation in the Western District of Washington barred NFRC’s claims by virtue of claim preclusion and issue preclusion. The District Court instead found that “on the basis of stare decisis ... the issues [raised by NFRC
 
 et al.]
 
 have been resolved by the decisions of Judge Dwyer in the Ninth Circuit.”
 
 Northwest Forest v. Secretary of Agriculture,
 
 Civ. No. 93-1621 (D.D.C. May 22, 1996) (trans.),
 
 reprinted in
 
 JA.. 247. The District Court then dismissed NFRC’s and the counties’ claims with prejudice. The counties settled their claims, leaving this court to decide only whether the District Court correctly dismissed NFRC’s claims.
 

 II. Analysis
 

 We find that the District Court erred as a matter of law in deciding that it was bound by the
 
 stare decisis
 
 effect of a decision from the Western District of Washington.
 
 Stare decisis
 
 does not mandate that a district court in this circuit follow the decision of a district court in another circuit. According to Moore’s Federal Practice,
 

 Stare decisis,
 
 briefly stated, makes each judgment a statement of the law, or precedent, binding in future cases
 
 before the same court or another court owing obedience to its decisions.
 

 IB JAMES Wm. MooRE et al., MooRe’s Federal PRACTICE ¶ 0.401 (2d ed.1996) (emphasis added). Moore goes on to explain how
 
 stare decisis
 
 operates in the federal system:
 

 The court of appeals in one circuit owes no obedience to decisions of a court of appeals in another circuit, though of course it may find the reasons given for such a decision persuasive, or may be influenced by the accumulation of authority. This freedom of the circuits to come each to its own conclusion is not only tolerated, but is an important feature in the operation of the Supreme Court’s certiorari practice.
 
 The district courts, like the courts of appeals, owe no obedience to the decisions of their counterparts in other districts, nor to the decisions of the courts of appeals in other circuits.
 

 Id.
 
 ¶ 0.402 (footnotes omitted; emphasis added). Circuit precedent is consistent with this rule.
 
 See, e.g., City Stores Co. v. Lerner Shops of D.C., Inc.,
 
 410 F.2d 1010, 1014 (D.C.Cir.1969). Simply stated, there was absolutely no basis for the trial court to conclude that it was bound by the decision of the Western District of Washington on
 
 stare de-cisis
 
 grounds.
 

 In an apparent effort to avoid an obvious reversal, the Government now claims that, actually, principles of
 
 comity
 
 rather than
 
 stare decisis
 
 motivated the judgment of the District Court.
 
 See, e.g.,
 
 Brief for Appellees at 19-20. However, our review of the District Court’s order does not support this contention. In point ■ of fact, the trial court judge repeatedly referred to the doctrine of
 
 stare decisis,
 
 and never once mentioned com
 
 *-683
 
 ity.
 
 See, e.g., Northwest Forest v. Secretary of Agriculture,
 
 Civ. No. 98-1621 (D.D.C. May 22, 1996) (trans.) (“[I]f I am to make a ruling today ... it will be on the basis of stare decisis only.”),
 
 reprinted in
 
 J.A. 247.
 

 Furthermore, the doctrine of comity would not support the dismissal of this case. The case law of this circuit makes it clear that “comity” is rarely employed to justify the dismissal of viable claims that are otherwise properly before the court. Rather, in strictly limited circumstances, we have sometimes held that comity may warrant dismissal of an action where there is a
 
 case pending
 
 in another jurisdiction involving the same parties, issues, and subject matter:
 

 Created to assure judicial efficiency and to reflect abiding respect for other courts, the doctrine [of comity] surely does not contemplate that fundamental rights of citizens will be adjudicated in, forums from which they are absent.
 

 In fact, though perhaps subconsciously at times, the courts have not allowed comity to be debased in such a fashion. The decisions invoking the principle involve circumstances in which the plaintiff in the later federal suit was a party to the earlier action involving the same issues and subject matter.
 

 Consumers Union of U.S., Inc. v. Consumer Prod. Safety Comm’n,
 
 590 F.2d 1209, 1219 (D.C.Cir.1978) (footnote omitted),
 
 rev’d on other grounds sub nom. GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,
 
 445 U.S. 375, 384-87, 100 S.Ct. 1194, 1200-02, 63 L.Ed.2d 467 (1980);
 
 see also Washington Metro. Area Transit Auth. v. Ragonese,
 
 617 F.2d 828, 830-31 (D.C.Cir.1980) (The court permitted dismissal on grounds of comity where the plaintiff was not a party to the other law suit only because plaintiff was a surety and as such was bound by any action against its principal of which it had notice.);
 
 Hilton Hotels Corp. v. Weaver,
 
 325 F.2d 1010 (D.C.Cir.1963) (The court upheld a dismissal based on grounds of comity where the case involved the same issues of law and fact and the same plaintiffs but different defendants as a prior adjudication in a different circuit);
 
 cf. Trainor v. Hernandez,
 
 431 U.S. 434, 440, 97 S.Ct. 1911, 1916, 52 L.Ed.2d 486 (1977) (In the context of federal comity to state proceedings, the Court has recognized that federal court abstention in favor of a state proceeding is appropriate only when the state litigation is “between the same parties and raising the same issues” as the federal litigation.). Comity, thus, cannot be used to explain the District Court’s dismissal of this case. For one thing, this ease involves at least some parties not before the court in the Western District of Washington. For another, the proceedings in the Western District of Washington were no longer pending when the dismissal was ordered. Accordingly, the District Court must be reversed.
 

 Given the alleged overlap between the issues raised in the District Court and the issues decided by the Western District of Washington, there is a possibility that some of appellants’ challenges may be barred by issue or claim preclusion. We will leave these matters for decision by the District Court on remand of the case.
 

 III. CONCLUSION
 

 We reverse the judgment of the District Court. The case is hereby remanded with instructions to the District Court to consider whether appellants’ challenges are barred by issue or claim preclusion and, if not, to dispose of the case on the merits.