The Rev.Dr. Michael A. NEWDOW, Plaintiff,

v.

James M. EAGEN, III, et al., Defendants.

No. CIV.A.02–01704 (HHK).

United States District Court, District of Columbia.

March 24, 2004.

Michael A. Newdow, Sacramento, CA, pro se.

Carolyn Betz Kerr, David Plotinsky, Geraldine R. Gennet, Kerry W. Kircher, Michael L. Stern, Morgan John Frankel, Patricia M. Bryan, Thomas Edward Caballero, Craig M. Blackwell, Washington, DC, for Defendant.

James Matthew Henderson, Sr., American Center for Law and Justice, Washington, DC, for Amicus.

## MEMORANDUM OPINION

KENNEDY, District Judge.

Plaintiff, the Rev. Dr. Michael A. Newdow ("Newdow"), brings this action to challenge Congress's practices regarding legislative prayer and chaplains under the First Amendment Establishment Clause, the Supremacy Clause of Article VI, Clause 2 of the U.S. Constitution, and the Religious Test Clause of Article VI, Clause 3 of the U.S. Constitution. Newdow brings this action against the United States, the United States Congress, several administrative officers of the United States Congress, and the chaplains of the House of Representatives and the Senate. Presently before this court are the United States' motion to dismiss the amended complaint [# 21], the House Defendants' motion to dismiss the amended complaint [# 22], and the Senate Defendants' motion to dismiss the amended complaint [# 23]. Upon consideration of defendants' motions, the oppositions thereto, and the record of this case, the court concludes that defendants' motions to dismiss the amended complaint must be granted.

## I. BACKGROUND INFORMATION

Newdow is a minister ordained by the Universal Life Church and the founder of the First Amendmist Church of True Science. Am. Compl. ¶¶ 82–83. Newdow claims to be an atheist who "absolutely denies the existence of any Supreme Being." *Id.* at 84.

Each House of Congress has a chaplain elected by its members. The chaplains, and their staffs, receive a federal salary. 2 U.S.C. § 61d; 2 U.S.C. § 84–2. Throughout history, the House and Senate chaplains have been theists.

Newdow claims he has been injured or will be injured by Congress's chaplaincy practice in four ways. First, Newdow claims that defendants' actions impair his right to observe government without being forced to "confront religious dogma he finds offensive." Am. Compl. ¶ 81. Second, Newdow alleges that he is injured because he applied for the position of legislative chaplain of both the Senate and the House, but was not seriously considered and was denied the position because of his religious beliefs. Third, Newdow alleges that he has suffered personal reproach as a result of Senate Chaplain Dr. Lloyd Ogil-

vie's prayer on June 27, 2002. Newdow asserts that Dr. Ogilvie's prayer was in direct response to the outcome of other litigation Newdow brought to challenge the federal Pledge of Allegiance statute and the recitation in public schools of the Pledge, which contains the words "under God." *Newdow v. U.S. Congress,* 292 F.3d 597, 608 (9th Cir.2002) (holding that the Pledge of Allegiance statute and a school district's policy of teacher-led recitation of the Pledge constituted an unconstitutional establishment of religion). Finally, Newdow claims that he has been injured as a taxpayer because his tax monies are used in part to fund the chaplains' salaries.

Newdow seeks declaratory and injunctive relief. Newdow seeks a declaration that: (1) offering legislative prayer violates the Establishment Clause of the First Amendment [1], (2) the practice of having legislative chaplains who are theists violates the Religious Test Clause of Article VI, Clause 3 [2], (3) statements in the prayers of legislative chaplains regarding God violate the oath or affirmation each chaplain has taken pursuant to Article VI, Clause 3, and (4) the chaplains' espousement of "the idea that allegiance to God supersedes allegiance to the Constitution," Am. Compl. at 20, violates the Supremacy Clause of Article VI, Clause 2.[3] Newdow also asks this court to recognize that *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), which upheld the practice of legislative prayer, has been overruled in light of more recent

Supreme Court pronouncements. Furthermore, Newdow seeks to enjoin the congressional chaplain defendants from espousing particular religious dogma and to enjoin the congressional officer defendants from making further salary disbursements to the congressional chaplains.

Defendants move to dismiss on the grounds that Newdow does not have standing to prosecute this action of standing and has failed to state a claim upon which relief can be granted.

## II. ANALYSIS

### A. Legal Standard

A motion to dismiss is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Martin v. Ezeagu,* 816 F.Supp. 20, 23 (D.D.C.1993) (internal quotation marks omitted); *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (stating that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In addition, the court must "construe the complaint in the light most favorable to [the] plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *In re United Mine Workers of Am. Employee Benefit Plans Litig.,* 854 F.Supp. 914, 915 (D.D.C.1994); *see Schuler*

---

1. The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion . . . ." U.S. CONST. amend. I.

2. Article VI, Clause 3 provides that: "The Senators and Representatives before mentioned . . . and all executive and judicial Officers . . . of the United States . . . shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever

be required as a Qualification to any Office or public Trust under the United States."

3. Article VI, Clause 2 provides that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

*v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979) (stating that the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged").

## B. Standing

 The party invoking federal jurisdiction bears the burden of demonstrating standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To establish standing under Article III, a plaintiff must establish the following: (1) that the plaintiff suffered an "injury in fact;" (2) that the injury is "fairly ... trace[able] to the challenged action of the defendant;" and (3) that the injury will "likely" be "redressed by a favorable decision." *Id.* at 560–61, 112 S.Ct. 2130 (1992) (citations and internal quotation marks omitted); *see also Animal Legal Defense Fund, Inc. v. Glickman,* 154 F.3d 426 (D.C.Cir.1998) (en banc). To qualify as an injury in fact, the interest harmed must be concrete, particularized, and actual or imminent. *Nat'l Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1433 (D.C.Cir.1995). Because standing is "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter upon which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130. Thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 561, 112 S.Ct. 2130 (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). As a result, the plaintiff need only allege facts "that 'demonstrate a realistic danger of

[the plaintiff's] sustaining a direct injury.'" *Bristol–Myers Squibb Co. v. Shalala,* 91 F.3d 1493, 1497 (D.C.Cir.1996) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). Thus, as long as the plaintiff can allege facts that, if true, would result in a legally cognizable injury, the court should not dismiss the complaint for lack of standing.

### 1. Right to Observe Government

Newdow claims he has standing because he has "in the past—and plans in the future—to observe his Congress in session," but has been and would be forced to "confront religious dogma he finds offensive" if he did so. Am. Compl. ¶¶ 80–81. Newdow alleges that on an April 11, 2003 visit to the Senate, he heard the guest chaplain begin his prayer with the phrase, "Our God," which caused injury because Newdow is an atheist.

 Newdow's alleged injury to his right to observe Congress is insufficient to confer standing because "the psychological consequence presumably produced by observation of conduct with which one disagrees ... is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms." *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 485–86, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Humane Soc'y of U.S. v. Babbitt,* 46 F.3d 93, 98 (D.C.Cir.1995) (stating that "general emotional harm, no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes") (internal quotation marks and citations omitted); *see also Tarsney v. O'Keefe,* 225 F.3d 929, 938 (8th Cir.2000) (stating that the plaintiffs "cite no case in which a court has recognized a perceived moral injury to be the type of direct injury

which can confer standing"). A plaintiff must also allege that she either altered her behavior because of the offensive activity, *see Am. Civil Liberties Union of Ill. v. City of St. Charles*, 794 F.2d 265, 268–69 (7th Cir.1986); *Hawley v. City of Cleveland*, 773 F.2d 736, 739–40 (6th Cir.1985); *Am. Civil Liberties Union of Georgia v. Rabun County Chamber of Commerce, Inc.*, 698 F.2d 1098, 1108 (11th Cir.1983); *Jewish War Veterans of U.S. v. United States*, 695 F.Supp. 3, 9–10 (D.D.C.1988), or is forced to confront offending the activity on a regular basis or in her normal routine, *Fordyce v. Frohnmayer*, 763 F.Supp. 654, 656 (D.D.C.1991).

■ Newdow has not alleged that he altered his behavior, or intends to alter his future behavior. Rather, he alleges that he "plans in the future—to observe his Congress in session," Am. Compl. ¶ 80. Nor has Newdow alleged that he is forced to confront the offending activity during his regular routine. Newdow lives and works in California, and traveling to the District of Columbia to observe the Senate on April 11, 2003 was outside his normal routine. As the Court stated in *Valley Forge*, a claim that the government has violated the Establishment Clause "does not provide a [plaintiff] special license to roam the country in search of governmental wrongdoing and to reveal [his] discoveries in federal court." 454 U.S. at 487, 102 S.Ct. 752.

In cases conferring standing solely based on direct exposure to an offensive religious display or activity, there generally has been "a personal connection between the plaintiff and the challenged display in his or her home community...." *Suhre v. Haywood County*, 131 F.3d 1083, 1087, 1090 (4th Cir.1997) (holding that a county resident had standing to challenge a Ten Commandments display in the county courthouse where he had to "confront

the religious symbolism whenever he enters the courtroom on either legal or municipal business"); *see also Washegesic v. Bloomingdale Pub. Schs.*, 33 F.3d 679, 681–83 (6th Cir.1994) (finding that a former student had standing to confront a religious portrait at a school where he still attended events and had "continuing direct contact" with the offensive object); *Foremaster v. City of St. George*, 882 F.2d 1485, 1491 (10th Cir.1989) (finding that daily confrontation with a municipality's offensive religious logo was sufficient to support standing although the plaintiff resided outside the city); *Saladin v. City of Milledgeville*, 812 F.2d 687, 692–93 (11th Cir.1987) (finding that the plaintiffs had standing to challenge city seal containing the word "Christianity" where they are "part of the City" and "regularly receive" correspondence bearing the seal). Newdow's observation of an offensive Senate prayer on one occasion fails to demonstrate the type of extensive interaction with allegedly offensive religious displays in one's community that have supported standing for Establishment Clause claims. Therefore, the court concludes that Newdow fails to establish standing based on his claim that his right to observe the government is impaired..

### 2. Governmental Employment

■ Newdow also maintains that he has standing on the grounds that he suffered an employment injury because he applied for the Senate and House legislative chaplain positions and will not be seriously considered due to his religious beliefs. This alleged injury is insufficient to establish standing because Newdow has not alleged an infringement of a legally protected interest. *See Claybrook v. Slater*, 111 F.3d 904, 907 (D.C.Cir.1997) ("[I]f the plaintiff's claim has no foundation in law, he has no legally protected

interest and thus no standing to sue."). First, the court notes that Newdow's attempt to assert standing on the basis of this employment injury inherently contradicts the basis of his suit, in which he seeks a declaration that the Senate and House chaplaincies and the practice of daily opening prayers are unconstitutional, and that the House and Senate should be prohibited from spending taxpayer funds to support such offices. In light of Newdow's belief that the practice of legislative chaplains violates the Constitution, he cannot also claim that he suffered injury to a legally cognizable interest when he was not selected to be Senate or House chaplain. Second, because *Marsh* held that a legislative body may employ a chaplain to "invoke Divine guidance," 463 U.S. at 792, 103 S.Ct. 3330, it follows that Congress may limit the chaplain position to those who are willing to perform that task. Indeed, the *Marsh* Court stated that the fact that prayers of the chaplains of the Nebraska legislature were "in the Judeo–Christian tradition" did not invalidate the state's practice. *Id.* at 793, 103 S.Ct. 3330. It appears in this case that Newdow's beliefs are "incompatible with what he desires." *Kurtz v. Baker,* 829 F.2d 1133, 1142 (D.C.Cir.1987). Thus,

Newdow has failed to allege an infringement of a legally protected interest.

 In addition, Newdow cannot meet the causation and redressability requirements because none of the defendants named in the instant case are Members of the House or Senate who have a vote in the selection of chaplains. U.S. CONST. art. I, § 2, cl. 5; *id.* at § 3, cl. 5. Newdow has sued four administrative officers of the Senate and House, as well as the Senate and House chaplains, but none of these individuals participates in the selection of chaplains for either house of Congress. Likewise, defendant the United States does not participate in the selection of House and Senate chaplains.[4] Newdow's naming of the "Congress of the United States" as a defendant does not cure the causation and redressability issues that exist because the selection of Senate and House chaplains is accomplished by each house independently, not by Congress as a bicameral body. Thus, Congress cannot be considered a defendant for purposes of analyzing the causation or redressability of Newdow's governmental employment injury. Because Newdow's alleged injury is not "fairly ... trace[able] to the challenged action of the defendant[s]," *Lujan,*

4. The court notes that sovereign immunity also applies to shield the United States from suit. Sovereign immunity bars suits against the federal government unless immunity is waived. *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *see also United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). A waiver of sovereign immunity must be "unequivocally expressed in statutory text," *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996), and "strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of Army v. Blue Fox, Inc.,* 525 U.S. 255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) (citations omitted). Newdow argues that 28 U.S.C. § 1346(a)(2), known as the Little Tucker Act, constitutes a waiver of federal sovereign immunity. However, this

provision has not been construed to waive sovereign immunity for equitable claims. *Berman v. United States,* 264 F.3d 16, 20–21 (1st Cir.2001); *Student Loan Mktg. Ass'n v. Riley,* 104 F.3d 397, 401 (D.C.Cir.1997); *Chabal v. Reagan,* 822 F.2d 349, 353–54 (3d Cir. 1987); *see also Richardson v. Morris,* 409 U.S. 464, 465, 93 S.Ct. 629, 34 L.Ed.2d 647 (stating that the Tucker Act, 28 U.S.C. § 1491, which gives district courts jurisdiction over claims against the United States for money judgments over $10,000, "has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States"). Thus, sovereign immunity applies to bar the United States from suit because there has been no waiver of immunity.

504 U.S. at 560, 112 S.Ct. 2130, a favorable decision would not redress this injury.

### 3. Personal Reproach

 Newdow's injury based on the "personal reproach" he suffered when Dr. Ogilvie offered a prayer declaring the Senate's "convictions in the Pledge [of Allegiance]," Am. Compl. ¶ 101, is inadequate to establish standing. The particular prayer at issue does not specifically mention Newdow or his religious beliefs. Even if the prayer indicated disagreement with a court's decision in which Newdow was a party, the disagreement is not particularized and does not confer standing. Alleged personal reproach from the June 27, 2002 prayer is a past harm that cannot be the basis for standing to seek injunctive relief. A single past instance of exposure to illegal conduct is insufficient to establish standing for injunctive relief if there are no "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 106–10, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (holding that a plaintiff who had been injured by a police chokehold lacked standing to seek injunctive relief prohibiting the use of chokeholds by the municipality's police department because he was not currently subjected to a chokehold or under an imminent threat of future harm from a police chokehold). Newdow claims that because the litigation involving the Pledge of Allegiance is ongoing, "it is likely that more developments will arise, after which the chaplains will see fit to offer more of their disrespectful comments." Pl.'s Opp'n to Def.'s Mot. to Dismiss at 14. The court finds that this threat of future stigmatic injury is too speculative to qualify as an injury in fact, which requires that the injury be "concrete, particularized, and [ ] actual or imminent, not conjectural or hypothetical." *Nat'l Taxpayers Union*, 68

F.3d at 1433. Thus, because Newdow has not shown that he is currently subjected to personal reproach or that he faces an imminent threat of future personal reproach from chaplains' prayers, he lacks standing for injunctive relief based on this alleged injury.

### 4. Taxpayer Standing

 Finally, defendants all contend that Newdow lacks taxpayer standing to assert his Article VI claims. In addition, defendant the United States argues that Newdow lacks taxpayer standing to bring his Establishment Clause claim. Although in general, an individual lacks standing based on federal taxpayer status, *see Frothingham v. Mellon*, 262 U.S. 447, 487–88, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), a "narrow exception" to the general rule against federal taxpayer standing exists in certain actions bringing Establishment Clause challenges. *Bowen v. Kendrick*, 487 U.S. 589, 618, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988). Under *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), a plaintiff can demonstrate federal taxpayer standing if she shows that: (1) the challenged government action is an "exercise[ ] of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution," and (2) that "the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power." *Id.* at 102–03, 88 S.Ct. 1942.

 Newdow fails to establish taxpayer standing as to his Article VI claims because he does not meet the first prong of the *Flast* test for any of these claims. Newdow's Religious Test Clause claim challenges each house's selection of its own officers, which is not an exercise of congressional power. *See* U.S. CONST. art.

I, § 2, cl. 5; *id.* at § 3, cl. 5. The D.C. Circuit has held that taxpayer standing cannot be established based on an internal practice of each house of Congress. *Kurtz*, 829 F.2d at 1140. Newdow's claims concerning Religious Test Oaths and the Supremacy Clause challenge the actions of chaplains themselves, not Congress, and therefore fail to meet the first prong of the *Flast* test.[5]

■ The United States argues that although Newdow brings an Establishment Clause challenge to Congress's payment of legislative chaplains' salaries, *see* 2 U.S.C. § 61d; 2 U.S.C. § 84–2, Congress's power to pay these salaries does not arise from its power to tax and spend. Instead, the United States contends that Congress's power to pay chaplains' salaries derives from the power of each house to choose its officers, U.S. CONST. art. I, § 2, cl. 5; U.S. CONST. art. I, § 3, cl. 5, and Congress's Necessary and Proper Clause powers, U.S. CONST. art. I, § 8, cl. 18. The United States relies on Judge MacKinnon's special concurrence in *Murray v. Buchanan*, 720 F.2d 689 (D.C.Cir.1983), in which he stated that "[p]ayment of the chaplains, in short, is clearly concomitant to Congress' constitutionally prescribed right to choose those officers in the first instance." *Id.* at 692 (MacKinnon, J., concurring specially). "Congress need not draw authority from [its taxing and spending power] if another

constitutional provision confers the power to spend for a specific purpose." *Richardson v. Kennedy*, 313 F.Supp. 1282, 1285 (W.D.Pa.1970) (three-judge court) (holding that there was no taxpayer standing to challenge a congressional pay raise enacted under U.S. CONST. art. I, § 6, cl. 1), *aff'd mem.*, 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971).

Newdow contends that the statutes authorizing payment of legislative chaplains, 2 U.S.C. § 61d; 2 U.S.C. § 84–2, were enacted under Congress's taxing and spending power. The court is not convinced that the authorities the United States cites support the proposition that Congress did not use its taxing and spending power in authorizing payment for legislative chaplains. Judge MacKinnon's concurring statement regarding the source of Congress's authority to compensate legislative chaplains was made in the context of discussing the political question doctrine rather than standing, and is not binding on the court. The instant case is also distinguishable from *Richardson* because the constitutional provision at issue in *Richardson*, U.S. CONST. art. I, § 6, cl. 1, specifically addresses compensation. The constitutional provisions regarding each house's authority to choose its own officers, however, make no reference to compensation or appropriation of money. In

---

**5.** The court notes that Newdow's Article VI claims may also fail to meet the second prong of the *Flast* test because neither the Supremacy Clause nor the Religious Test Clause have been recognized as limitations on Congress's taxing and spending power in the same way the Establishment Clause has. *See, e.g.,* *Booth v. Hvass*, 302 F.3d 849, 852 (8th Cir. 2002) (stating that the Supreme Court "has never found any other constitutional provision [other than the Establishment Clause] that satisfies *Flast*"); *Col. Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1399 (10th Cir.1992) ("[T]he [Supreme] Court has indicated that *Flast* applies only to cases in which

a federal taxpayer challenges a congressional appropriation made pursuant to Article 1, Section 8 that allegedly violates the Establishment Clause of the First Amendment."); *Fulani v. Brady*, 935 F.2d 1324, 1327 n. 2 (D.C.Cir.1991); *Dist. of Columbia Common Cause v. Dist. of Columbia*, 858 F.2d 1, 3–4 (D.C.Cir.1988) ("The [Supreme] Court has never recognized federal taxpayer standing outside the[] narrow facts [of *Flast*]."); *Taub v. Kentucky*, 842 F.2d 912, 916 (6th Cir.1988) ("*Flast v. Cohen* appears to create a fairly narrow exception to the [rule against taxpayer standing], and may apply only to Establishment Clause cases . . . .").

*Katcoff v. Marsh*, 582 F.Supp. 463 (E.D.N.Y.1984), *aff'd in pertinent part*, 755 F.2d 223, 231 (2d Cir.1985), the court held that taxpayer standing existed to challenge the constitutionality of the Army chaplaincy program. 582 F.Supp. at 470–71 ("Whatever additional powers Congress may have exercised in passing the Army's budget, which includes funds for the [chaplaincy] [p]rogram, it clearly exercised its Constitutional authority to spend.").[6],[7] In the same way, Newdow has taxpayer standing to challenge the legislature's expenditures on legislative chaplains' salaries. The court finds that the enactment of 2 U.S.C. § 61d and 2 U.S.C. § 84–2, which authorized payment for Senate and House chaplains was at least in part an exercise of Congress's authority under the taxing and spending clause of U.S. CONST.

art. I, § 8. As a result, Newdow has taxpayer standing to bring his Establishment Clause claim. The court now turns to the merits of Newdow's Establishment Clause claim.

## C. Failure to State a Claim

 Controlling precedent has either expressly or impliedly rejected Newdow's Establishment Clause claim on the merits. In *Marsh*, the Supreme Court held that the Nebraska legislature's practice of beginning each session with a prayer by a chaplain paid by the state did not violate the Establishment Clause. 463 U.S. at 795, 103 S.Ct. 3330. The Court relied on the actions of the First Congress, which "adopted the policy of selecting a chaplain to open each session with prayer" and

---

**6.** The court notes that the finding of taxpayer standing in *Marsh* does not control the determination of standing in the instant case because standing in *Marsh* was based on the plaintiff's status "as a member of the Legislature and as a taxpayer whose taxes are used to fund the chaplaincy." 463 U.S. at 786 n. 4, 103 S.Ct. 3330. Newdow is not a member of Congress. Furthermore, state taxpayer standing requirements differ from federal taxpayer standing requirements. *Dist. of Columbia Common Cause*, 858 F.2d at 4–5.

The court also notes that the D.C. Circuit's en banc decision in *Murray* did not address the issue of standing. The court remanded for dismissal "for want of a substantial constitutional question" in light of the Supreme Court's decision in *Marsh*. *Murray*, 720 F.2d at 690. Then–Judge Ginsburg stated that the en banc panel's disposition "l[eft] open the two divisive justiciability issues (standing and political question) initially confronted in the case." 720 F.2d at 699 (special statement of Ginsburg, J., concurring).

**7.** The court acknowledges that in *Kurtz v. Kennickell*, 622 F.Supp. 1414 (D.D.C.1985), Judge Oberdorfer found taxpayer standing to challenge use of public funds to print and publish an annual compilation of prayers of congressional chaplains. *Id.* at 1416. Judge Oberdorfer relied on the D.C. Circuit's en

banc opinion in *Murray*, which he interpreted as "recogniz[ing] the standing of a taxpayer to challenge the use of appropriated funds in violation of the Establishment Clause." *Id.* The United States argues that Judge Oberdorfer's standing decision does not survive the D.C. Circuit's subsequent decision in a companion case, *Kurtz v. Baker*, 829 F.2d at 1139–40, which held that the plaintiff lacked taxpayer standing to challenge the refusal of House and Senate chaplains to invite nontheists as guest chaplains. 829 F.2d at 1139–40. The D.C. Circuit found that the action challenged did not meet the first prong of the *Flast* test because the plaintiff did not challenge an exercise of congressional power, but rather the internal practices of the House and Senate. *Id.* at 1140. The court does not find that *Kurtz v. Baker* effectively overruled Judge Oberdorfer's standing determination because an exercise of congressional spending power, not internal actions of each house, were at issue in *Kurtz v. Kennickell*. However, it appears that Judge Oberdorfer's characterization of the en banc panel decision in *Murray* as recognizing taxpayer standing may be flawed, given then-Judge Ginsburg's statement regarding the scope of the en banc disposition. *Murray*, 720 F.2d at 699 (special statement of Ginsburg, J., concurring). Thus, this court does not rely on *Kurtz v. Kennickell* in finding that taxpayer standing exists.

passed a statute authorizing payment of chaplains before reaching consensus on the language of the Bill of Rights. *Id.* at 788, 103 S.Ct. 3330. The *Marsh* Court stated that "[c]learly the men who wrote the First Amendment Religion Clause did not view paid legislative chaplains and opening prayers as a violation of that Amendment, for the practice of opening sessions with prayer has continued without interruption ever since that early session of Congress." *Id.* The Court found that the Framers' intent and the "unambiguous and unbroken history of more than 200 years" supported its conclusion that the practice of opening legislative sessions with prayer was constitutional. *Id.* at 792, 103 S.Ct. 3330. The Court stated that the practice had "become part of the fabric of our society," and that "[t]o invoke Divine guidance on a public body entrusted with making the laws is not, in these circumstances, an 'establishment' of religion or a step toward establishment; it is simply a tolerable acknowledgment of beliefs widely held among the people of this country." *Id.* The Court specifically rejected challenges to the Nebraska legislature's practice based on the tenure and denomination of the incumbent chaplain, the chaplain's status as a paid public employee, and the content of the chaplain's prayers, which were described as "in the Judeo–Christian tradition." *Id.* at 793–95, 103 S.Ct. 3330.

In *Murray,* decided three months after the Court's decision in *Marsh,* the D.C. Circuit held that the public funding of congressional chaplains did not violate the Establishment Clause. 720 F.2d at 690. The D.C. Circuit stated that in light of *Marsh,* "[w]e perceive no tenable basis for a claim that the very congressional practice deliberately traced by the Court in *Marsh* should be subject to further review." *Id.* The court then dismissed the appeal, vacated the District Court's judgment, and remanded with instructions to dismiss the action for want of a substantial constitutional question. *Id.* The court's dismissal for lack of a substantial constitutional question demonstrates the D.C. Circuit's view of the wholly insubstantial nature of the claims presented. "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)).

Newdow argues that the Supreme Court has silently overturned *Marsh,* citing seventeen Supreme Court decisions he maintains are inconsistent with *Marsh.* See App. A to Pl.'s Opp'n to Def.'s Mot. to Dismiss. In particular, Newdow relies heavily on specific language in *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), and *Santa Fe Independent School District v. Doe,* 530 U.S. 290, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000). In *Lee,* the Court stated that "though the First Amendment does not allow the government to stifle prayers which aspire to these ends, neither does it permit the government to undertake that task for itself." 505 U.S. at 589, 112 S.Ct. 2649. In *Santa Fe,* the Court stated that "the religious liberty protected by the Constitution is abridged when the State affirmatively sponsors the particular religious practice of prayer." 530 U.S. at 313, 120 S.Ct. 2266. Newdow maintains that in light of these pronouncements, this court must recognize that *Marsh* has been overruled.

██ This court has no authority to conclude that the Supreme Court's "'more

recent cases have, by implication, over-ruled an earlier precedent.'" *United States v. Weathers,* 186 F.3d 948, 957 n. 12 (D.C.Cir.1999) (quoting *Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)); *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) ("Needless to say, only [the Supreme] Court may overrule one of its precedents."). *Stare decisis* "makes each judgment a statement of the law, or prece-dent, binding in future cases before the same court or another court owing obedi-ence to its decisions." *Northwest Forest Resource Council v. Dombeck,* 107 F.3d 897, 900 (D.C.Cir.1997) (quoting 1B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRAC-TICE ¶ 0.401 (2d ed.1996)) (emphasis omit-ted).

None of the seventeen Supreme Court decisions Newdow relies upon criticized the decision in *Marsh.* Instead, several of the cases reaffirmed *Marsh. See, e.g., Lynch v. Donnelly,* 465 U.S. 668, 676, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (listing the historic practice of employing con-gressional chaplains as an example of the government's acknowledgment of the country's religious heritage); *County of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter,* 492 U.S. 573, 595 n. 46, 603 n. 52, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (stating that legislative prayer is a constitutional "form of ac-knowledgment of religion" and that "[l]eg-islative prayer does not urge citizens to engage in religious practices") (citations omitted). *Lee* and *Santa Fe,* the cases from which Newdow primarily quotes to support his position that *Marsh* was im-plicitly overruled, deal with religious ac-tivity in public schools. The Court has frequently stated that state-sponsored re-ligious activity in public schools raises particular Establishment Clause concerns. *See, e.g., Lee,* 505 U.S. at 592, 112 S.Ct. 2649 ("As we have observed before, there are heightened concerns with protecting freedom of conscience from subtle coer-cive pressure in the elementary and sec-ondary public schools."); *Bd. of Educ. of Westside Cmty. Schs. v. Mergens ex rel. Mergens,* 496 U.S. 226, 261–62, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990) (Kennedy, J., concurring) (stating that the inquiry regarding "whether the government im-poses pressure upon a student to partici-pate in a religious activity .... must be undertaken with sensitivity to the special circumstances that exist in a secondary school where the line between voluntary and coerced participation may be difficult to draw"); *Edwards v. Aguillard,* 482 U.S. 578, 583 n. 4, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (stating that the his-torical approach used in *Marsh* "is not useful in determining the proper roles of church and state in public schools, since free public education was virtually nonex-istent at the time the Constitution was adopted"). Thus, the language Newdow relies upon in *Lee* and *Santa Fe* does not impliedly overrule *Marsh.* Indeed, *Lee* specifically mentioned the constitutional difference between legislative chaplaincies and the coercive school prayer at issue. 505 U.S. at 596–97, 112 S.Ct. 2649 ("In-herent differences between the public school system and a session of a state legislature distinguish this case from *Marsh.*").

Accordingly, Newdow's Establishment Clause claim must be dismissed for failure to state a claim.

## III. CONCLUSION

For the foregoing reasons, the court concludes that defendants' motions to dis-miss the amended complaint must be granted. An appropriate order accompa-nies this memorandum opinion.

## ORDER AND JUDGMENT

Pursuant to FED. R. CIV. P. 58 and for the reasons stated by the court in its memorandum opinion docketed this same day, it is this 24th day of March, 2004, hereby

**ORDERED and ADJUDGED** that the complaint in this case is **DISMISSED.**